Jerry K. THOMPSON, Defendant–
Appellant,

v.

STATE of Indiana, Plaintiff–Appellee.

No. 33S00–9309–CR–1026.

Supreme Court of Indiana.

Oct. 2, 1996.

Eugene C. Hollander, Special Assistant to the Office of the State Public Defender, Indianapolis, for defendant-appellant.

Pamela Carter, Attorney General of Indiana, Lisa M. Paunicka, Deputy Attorney General, Indianapolis, for plaintiff-appellee.

DICKSON, Justice.

Defendant Jerry Thompson was convicted of the murder of Wesley Crandall, Jr., in Crandall's New Castle home, on February 14, 1991. After being found to be a habitual offender, the defendant was sentenced to a term of ninety years. In this direct appeal,[1] the defendant raises two issues: (1) sufficiency of the evidence and (2) effectiveness of his trial counsel. We affirm the judgment of the trial court.

█ The defendant contends that the evidence at trial was insufficient to support his conviction because it almost entirely either consisted of, or derived from, the assertions of his alleged accomplice, Douglas Percy. The defendant claims Percy committed the murder and lied about the defendant's participation. He alternatively argues that the statements of two other persons originally charged in the murder reveal a knowledge of the crime and the murder scene that necessarily implicates either them or the detective who took their statements, thus exonerating the defendant.

█ An appellate claim of insufficient evidence will prevail if, considering the evidence and reasonable inferences therefrom that support the judgment, and without weighing evidence or assessing witness credibility, we conclude that no reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. *Case v. State,* 458 N.E.2d 223, 226 (Ind.1984); *Loyd v. State* 272 Ind. 404, 407, 398 N.E.2d 1260, 1264, *cert. denied,* 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105 (1980). A murder conviction may rest solely on the uncorroborated testimony of an accomplice. *Lowery v. State,* 547 N.E.2d 1046, 1053 (Ind.1989), *cert. denied,* 498 U.S. 881, 111 S.Ct. 217, 112 L.Ed.2d 176 (1990).

The evidence favorable to the verdict reveals that, several weeks prior to the murder, Thompson and Percy drove to New Castle, Indiana, where Percy introduced the defendant to Crandall, a marijuana dealer. On February 12, 1991, two days prior to the murder, Thompson instructed his girlfriend

to purchase a twelve-gauge shotgun and ammunition. After she had purchased the shotgun, Thompson and Percy altered the shotgun by shortening the barrel and fashioned a sling to carry the weapon. On the morning of the murders, Thompson asked Percy to accompany him to New Castle to purchase marijuana from Crandall and requested that Percy bring along the sawed-off shotgun. After they entered Crandall's home, Thompson requested the shotgun from Percy and went into the kitchen. Percy then heard a thud, and Thompson told him, "I think I broke his neck." When Percy entered the kitchen, he saw Crandall's body on the floor. Thompson told Percy to take the marijuana that Crandall stored in his refrigerator. Percy then saw Thompson attempt to shoot the decedent with two different small handguns. After these guns misfired, Thompson exited the kitchen, returned with a pillow and the sawed-off shotgun, and shot Crandall through the pillow in the head. Thompson and Percy then took the bag of marijuana along with a trash bag filled with various ammunition and handguns and left Crandall's home. During their return trip to Indianapolis, Thompson and Percy discussed their alibis. Thompson later destroyed some of the weapons that he had taken from Crandall's house and sold the others. Soon after the murder occurred, two other men, Ralph Jacobs and Christopher Smith, were arrested, confessed, and pleaded guilty to the crime. The ensuing convictions of Jacobs and Smith, however, were overturned when the trial court granted their petitions for post-conviction relief, which in part alleged that their confessions resulted from improper police interrogation.

Notwithstanding the defendant's assertion that Percy was the exclusive source of essentially all of the evidence against him, the weight and credibility of Percy's testimony were matters to be evaluated and determined by the jury. *See Lowery,* 547 N.E.2d at 1053. Likewise, because the jury was not bound to credit the statements of Jacobs and Smith, we reject the defendant's claim that

1. Appellate review in this case has been impeded by the defendant's failure to comply with Indiana Appellate Rule 8.3(A)(6), which requires that the

argument section of the brief be preceded by a brief summary of the argument on each issue.

the evidence is insufficient because of the allegedly self-incriminatory nature of the particularized information reflected within these statements. We find that a reasonable jury could have found the defendant guilty beyond a reasonable doubt.

The defendant also seeks discharge or a new trial on the grounds that he received ineffective assistance of trial counsel.[2] In support of this contention, he specifies thirty-three instances of alleged ineffectiveness, which he groups into the following categories:

 a. failure to request a change of venue,

 b. failure to request a change of judge,

 c. failure to seek appointment of a special prosecutor,

 d. failure to limit scope of prejudicial factual information,

 e. ineffective representation during voir dire proceedings,

 f. failure to object to repetitious hearsay testimony,

 g. failure to present witness testimony,

 h. failure to object to testimony regarding guns and gun parts, and

 i. miscellaneous other allegations of deficient representation.

The resolution of the defendant's claim of ineffective assistance of counsel is guided by the Sixth Amendment to the United States Constitution and the United States Supreme Court's decisions interpreting that provision, specifically *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and its progeny. As explained in *Spranger v. State*, 650 N.E.2d 1117 (Ind. 1995):

> *Strickland* embodies the following principles. Reversal for ineffective assistance of counsel may be appropriate in cases where a defendant shows both (a) that counsel's performance failed to meet an objective standard of reasonableness as measured by predominate professional norms, and (b) that such deficient performance so prejudiced the defendant as to deprive him of a fair trial. It shall be strongly presumed that counsel assisted the defendant adequately and exercised reasonable professional judgment in making all significant decisions. Judicial scrutiny of counsel's performance is highly deferential and should not be exercised through the distortions of hindsight. Inexperience or isolated instances of poor tactics or strategy do not necessarily amount to ineffectiveness of counsel. To prove resulting prejudice amounting to the deprivation of a fair trial, the defendant must demonstrate a reasonable probability that, but for counsel's deficient performance, the result would have been different.

*Id.* at 1121 (citations omitted).

When evaluating ineffectiveness claims, courts must be cognizant of the fact that "[t]here are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 695. Accordingly, when appellate courts are considering the claim of actual ineffectiveness of counsel, they "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690, 104 S.Ct. at 2066, 80 L.Ed.2d at 695.

At the outset we observe the breadth of the defense trial counsel's efforts on the defendant's behalf. In pre-trial proceedings, his counsel initiated various proceedings and filed and pursued various motions, including a notice of intent to impose insanity defense, a notice of alibi, a motion to determine competence, a motion for bail, a motion for transcripts of the Jacobs and Smith proceedings, a motion for employment of forensic scientists at public expense, eight motions in li-

**2.** Prior to filing his brief, the defendant-appellant petitioned this Court for remand to the trial court to permit him to file a petition for post-conviction relief and to present evidence supporting his contentions regarding the claim of ineffective assistance of trial counsel, pursuant to *Hatton v. State*, 626 N.E.2d 442 (Ind.1993), and *Davis v. State*, 267 Ind. 152, 368 N.E.2d 1149 (1977). Finding that the appellant had failed to make any showing that his claim of ineffective assistance of counsel has a substantial likelihood of success at trial, we denied his petition, and this appeal ensued.

mine, a motion to produce, thirty subpoenas (including two subpoenas duces tecum), and a pre-trial deposition. Defense counsel called thirty-two witnesses at the five-day hearing on the defendant's motion for bail and seven witnesses during the seven-day jury trial, and he conducted competent cross-examinations of the thirty-three prosecution witnesses at trial.

■ The defendant's first allegation of ineffective assistance of counsel rests on his claim that his trial attorney failed to raise the issue of pre-trial publicity, to gather the necessary documentation, or to request a change of venue. As noted by the defendant, the record of proceedings does not contain any supporting documentation to demonstrate the existence of such publicity. However, he asserts that the presence of pervasive pre-trial publicity is established by the trial court's decision to conduct individual voir dire of the prospective jurors on the matter of pre-trial publicity and the judge's statement to the jury panel that "there probably will be publicity generated about what we are doing today, in newspaper, on radio, perhaps on television." Record at 1698.

This conduct by the judge does not establish the existence of such prejudicial publicity that defense counsel should necessarily have sought a change of venue. The defendant has not demonstrated that trial counsel was deficient in this regard.

■ The defendant next argues that his trial counsel's ineffectiveness is evidenced by counsel's failure to request a change of judge or the appointment of a special prosecutor. The defendant emphasizes that Judge McNichols, who presided at his trial, had also presided over both the criminal proceedings in which Jacobs and Smith were charged with and pleaded guilty to Crandall's murder and the subsequent post-conviction proceedings that led to the reversal of their convictions. Similarly, the defendant points to the role of the Henry County Prosecutor in the reopening of the Crandall murder investigation and the prosecutor's participation in the

subsequent events that led to the overturning of the convictions of Jacobs and Smith.

■ The defendant argues that his defense counsel should have sought the recusal of Judge McNichols (or, alternatively, that the judge should have removed himself) because the judge's prior judicial responsibilities in the cases of Jacobs and Smith provided a reasonable basis for questioning his impartiality, requiring disqualification pursuant to Indiana Code of Judicial Conduct Canon 3E(1). The defendant claims that his theory of defense (that it was Jacobs and Smith who murdered Crandall), was undermined because the presence of Judge McNichols in the courtroom conveyed to the jury a constant reminder of the fact that the judge had personally determined that Jacobs and Smith were not guilty of this crime. The defendant claims that embarking upon this strategy of attempting to prove that Jacobs and Smith were in fact the murderers, while not removing Judge McNichols, constituted ineffective assistance of counsel. Significantly, the defendant has not identified any example of the trial judge's actual bias or prejudice against him. *See Perry v. State*, 585 N.E.2d 715, 716 (Ind.Ct.App.1992). Furthermore, a decision by trial counsel concerning whether to file particular motions is a matter of trial strategy, and a defendant "must present strong and convincing evidence to rebut the presumption that counsel was competent." *Stroud v. State*, 587 N.E.2d 1335, 1338 (Ind.Ct.App.1992). The defendant has failed to establish that trial counsel erred in not seeking a change of judge.

■ Similar to his claims with respect to the judge, the defendant contends that the prosecutor, by his mere presence, became a "silent witness" and, by speaking to the jury as the attorney for the State, became a "major participant" in asserting the guilt of the defendant and the innocence of Jacobs and Smith. The defendant contends that his trial counsel's failure to seek a change in the prosecutor resulted in unfair prejudice.[3]

We find no basis to conclude that this case required the appointment of a special prose-

---

3. We further reject the defendant's argument that the prosecutor should have disqualified himself from participating in this case pursuant to

Indiana Professional Conduct Rule 3.7. The prosecutor was not a necessary witness in the case and did not testify.

cutor. Such appointments are authorized only under certain circumstances, including where (1) the regular prosecuting attorney agrees that such appointment is necessary, or (2) a trial court finds by clear and convincing evidence either that such appointment is necessary to avoid an actual conflict of interest or that probable cause exists to believe that the prosecutor committed a crime. IND. CODE § 33–14–1–6 (1993). The defendant has failed to demonstrate the presence of any of these prerequisites.

 The defendant next claims that ineffective assistance of counsel is demonstrated by the failure of his trial counsel to file a pretrial motion in limine to prevent the prosecutor from informing the jury concerning the post-conviction proceedings granting relief for Jacobs and Smith or to prevent the jury from knowing that the same prosecutor and judge were involved. He argues that the jury should have been permitted to receive only evidence tending to incriminate Smith and Jacobs, without learning that their convictions for the murder were later vacated upon a finding that Jacobs's confession was coerced. We cannot conclude that such a motion in limine would necessarily have been granted by the trial court. Evidence of the post-conviction proceedings for Jacobs and Smith could have been quite relevant to facilitate jury determination of the roles Jacobs and Smith played in the murder. The defendant has not shown that his trial counsel was constitutionally deficient for failure to file the motion in limine.

 The defendant further claims that ineffective assistance of trial counsel occurred during the voir dire process. The defendant asserts that, during the individual questioning ordered by the trial court, whenever a prospective juror disclaimed any knowledge of pretrial publicity about the case, the prosecutor engaged in a pattern of informing that prospective juror that Smith and Jacobs confessed to killing Crandall, pleaded guilty, were sentenced to prison, and were subsequently released from prison after the defendant was charged. The prosecutor then sought the prospective juror's assurance of an open mind and fairness, notwithstanding this information. Citing this pattern and

other examples, the defendant argues that his trial counsel failed to act to prevent the prosecutor from improperly indoctrinating the jury. However, the defendant has not established that the prosecutor's voir dire technique was necessarily objectionable. To the contrary, permitting prospective jurors to hear about the confessions and guilty pleas of Jacobs and Smith could have been a reasonable defense trial strategy.

 In further support of his claim of ineffective assistance of trial counsel, the defendant alleges his counsel's failure to object to the State's use of repetitious hearsay testimony. Both before and after the testimony of the principal prosecution witness, Douglas Percy, investigating police officers testified regarding the content of Percy's statements to them. The defendant argues that this repetition had the effect of bolstering Percy's testimony.

This Court recognizes the danger of such testimony and has recently explained the appropriate judicial analysis at trial upon a challenge to out-of-court statements received by investigating police officers. *Craig v. State*, 630 N.E.2d 207, 210–11 (Ind.1994). However, even where such testimony is improperly admitted over objection, such error may be harmless if the defendant's substantial rights are not affected. *See id.* at 216. In the present case, the officers' recitations of Percy's statements were duplicative of Percy's own testimony. Even if improperly admitted, the admission of such officers' testimony, notwithstanding its repetitious effect, did not so prejudice the defendant as to deprive him of a fair trial.

 The defendant next contends that his trial counsel was ineffective for failing to present the testimony of Lori Fox to discredit the testimony of Douglas Percy, the prosecution's primary witness. Percy stated that just prior to the killing he and the defendant spent one or two hours at the home of defendant's brother, in the presence of Fox, the brother's girlfriend. At a previous hearing on the defendant's Motion to Let to Bail, Fox had provided testimony indicating that, on the day of the crime, Percy and the defendant were not at the brother's home with

her. The defendant argues that his trial counsel was ineffective for failing to call her as a witness or, in the event of her unavailability to testify, to place in evidence her testimony at the bond reduction hearing.

As previously noted, in considering a claim of ineffective assistance of counsel, our review of counsel's performance is highly deferential, and we seek to avoid the potential distortions of hindsight. There is no evidence in the record suggesting that Fox was not personally available to testify, but we note a variety of possible reasons why defense counsel may have reasonably decided against presenting her testimony, such as her potential lack of credibility, her possible knowledge of other information adverse to the defendant, and the substantial risk of her detrimental vulnerability on cross examination. We remain unconvinced that trial counsel's performance was deficient for failing to present her testimony at trial.

■■■■■■ The defendant further asserts that his trial counsel was ineffective by failing to object to the admission of all testimony and items of evidence relating to the victim's purchase of several guns, the discovery of certain guns in Percy's van when he and the defendant were apprehended in an Illinois traffic stop, and the search of Percy's garage and yard on grounds that the evidence was not properly identified, connected to the defendant, or otherwise admissible. The defendant's companion, Percy, testified that before the defendant committed the murder using his own shotgun, he had attempted to shoot the victim with two of the victim's guns, which misfired. After the killing, the defendant filled and removed from the victim's home a trash bag with the victim's guns, including a .22–caliber revolver and several semi-automatic pistols. Percy also testified that the defendant had buried guns or gun parts taken from the victim's home in Percy's yard.

■■■■■ The defendant's trial counsel cannot be found deficient for failing to make an objection that would not have been sustained

at trial. The deferential standard by which the disputed evidence's admissibility would have been judged,[4] as acknowledged by the defendant, can be summarized as follows:

> We ... note the standards applied in the appellate review of admissibility questions. The question of admissibility of any particular evidence is within the discretion of the trial court and the trial court is accorded wide latitude in ruling on the relevancy of evidence. Even if offered evidence or testimony is only marginally relevant, it is within the sound discretion of the trial court to determine its admissibility. Evidence is relevant when it throws or tends to throw light on the guilt or innocence of an accused[,] even though its tendency to do so is slight. Admission of physical evidence is governed by the same rules of relevancy and materiality which govern the admission of testimonial evidence.

*Bieghler v. State,* 481 N.E.2d 78, 88–89 (Ind. 1985), *cert. denied,* 475 U.S. 1031, 106 S.Ct. 1241, 89 L.Ed.2d 349 (1986) (citations omitted). *See also Jones v. State,* 536 N.E.2d 267, 272 (Ind.1989) (holding any evidence legitimately connecting the defendant with the crime admissible). Clearly, evidence regarding the victim's possession of guns at the time of his death and the possession and disposition of the victim's guns by the defendant and by Percy after the murder was relevant. To the extent that some of the evidence regarding other guns and gun parts may have been of questionable relevance, we decline to find the failure to object to constitute an omission sufficient to demonstrate a reasonable probability that the exclusion of such evidence would have resulted in a different trial outcome. We decline to find counsel ineffective as to this claim.

The defendant concludes with a list of twenty-three instances that he claims to be additional examples of his trial counsel's deficient performance. Among these allegations are the failure to ask particular questions or present certain evidence; the failure to take some procedural steps at trial; and the fail-

---

4. The introduction and definition of relevant evidence is currently governed by Indiana evidence rules 401 and 402. However, this matter was tried in 1993, prior to this Court's adoption of the Indiana Rules of Evidence. Accordingly, this claim is analyzed under the common law as it existed at the time of trial.

ure to object to speculation, narrative testimony, leading questions, hearsay, and other allegedly improper evidence or trial events. Considered individually and collectively, these examples do not demonstrate a deficiency in trial counsel's performance that so prejudiced the defendant as to deprive him of a fair trial.

In conclusion, the defendant has not established his claim of ineffective assistance of trial counsel. Applying the *Strickland* standard of judicial scrutiny, which avoids the distortions of hindsight and recognizes that isolated incidents of poor tactics or strategy do not necessarily amount to ineffectiveness of counsel, we find that the defendant was adequately represented at trial.

The judgment of the trial court is affirmed.

SHEPARD, C.J., and SULLIVAN, SELBY, and BOEHM, JJ., concur.