**Eugene C. RUFFIN, Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

No. 49S00–9802–CR–258.

Supreme Court of Indiana.

March 28, 2000.

---

**2.** Ind.Code § 35–42–1–1 (1993).

Teresa D. Harper, Liell, McNeil, & Harper, Bloomington, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

SULLIVAN, Justice.

Defendant Eugene Ruffin was convicted of felony murder and reckless homicide for shooting a man to death. Defendant argues that (1) the evidence was insufficient to support his felony murder conviction and (2) it was improper to impose judgments and sentences for both felony murder and reckless homicide. We find the

evidence sufficient, but agree that convictions of both felony murder and reckless homicide for killing the same person cannot stand.

We have jurisdiction over this direct appeal because the longest single sentence exceeds 50 years. Ind. Const. art. VII, § 4; Ind. Appellate Rule 4(A)(7).

### Background

The facts most favorable to the verdict reveal that on December 18, 1995, Defendant,[1] Eugene C. Ruffin, wearing a Chicago Bulls jacket and a pullover shirt with a hood, went to Chad Taylor's house and borrowed a shotgun from him. The victim, Emberson, owed Defendant $140.00, and Defendant told Taylor that he wanted the shotgun so he could collect his money.

Later that same evening, Michael Harris was walking down an alley and noticed Defendant, wearing a hooded sweatshirt, standing next to Emberson's truck, and talking to Emberson who was sitting in the driver's seat. Defendant then walked around the truck, got into the passenger's side, and the truck began to move. As Harris continued to walk down the alley toward a phone booth, he heard a "loud pop sound" from the direction of the truck. He turned around to see that the truck had stopped moving.

Annie Burns, who lived nearby, also heard a sound she described as a "shot." Burns looked out her window after hearing the noise and saw Emberson's truck in the alley. She also saw someone wearing a hood over his head running from the direction of the truck. At approximately the same time, David Whiteside, Annie Burns's son and a friend of Emberson's, went outside, saw Emberson's truck, saw someone wearing a sports jacket and hood running from the truck, and walked over to the truck to see what was happening.

When Whiteside realized that Emberson was injured, he ran back to the house and told his mother to call the police. Emberson died of a single close range gunshot wound to the head.

Defendant returned to Chad Taylor's house the same evening. Taylor testified that Defendant looked "shocked, dazed" and had blood on the left side of his head, hands, Chicago Bulls jacket, and pants. Defendant told Taylor and Larry Baugh, Taylor's housemate, that he saw Emberson, confronted him, and got into an argument with him during which Defendant pulled the gun out. Defendant and Emberson fought over the gun and it went off, shooting Emberson. Later in the week, police came to Taylor's house with a search warrant and found a shotgun shell and a Chicago Bulls jacket covered with blood consistent with Emberson's. As part of a different search, the police also seized from Defendant a plaid jacket which had blood on it consistent with Emberson's.

Defendant was charged with Murder,[2] Felony Murder,[3] and Conspiracy to Commit Robbery,[4] a Class B felony. The trial court granted Defendant's Motion for Judgment on the Evidence as to the Conspiracy to Commit Robbery count. The jury convicted Defendant of Reckless Homicide,[5] a lesser included offense of Count I, Murder, and Felony Murder as charged in Count II. The trial court sentenced Defendant to a 60-year imprisonment for his felony murder conviction and an eight-year imprisonment for his reckless homicide conviction—the reckless homicide sentence to be served concurrent to the felony murder sentence.

Additional facts will be provided as necessary.

---

1. Several entries in the record refer to Defendant by his nickname, "Squeaky."

2. Ind.Code § 35–42–1–1(1) (1993).

3. *Id.* § 35–42–1–1(2).

4. *Id.* §§ 35–41–5–2 & 35–42–5–1.

5. *Id.* § 35–42–1–5.

*Discussion*

I

 Defendant asserts that the evidence presented at trial was insufficient to establish the requisite element of intent to commit robbery—the underlying offense for Defendant's felony murder charge.[6] We neither reweigh the evidence nor assess the credibility of witnesses when reviewing a sufficiency of the evidence claim. *Thornton v. State,* 712 N.E.2d 960, 961 (Ind.1999); *Hurst v. State,* 699 N.E.2d 651, 654 (Ind.1998); *Roach v. State,* 695 N.E.2d 934, 941 (Ind.1998), *reh' g denied.* We only consider the evidence favorable to the jury's verdict, draw all reasonable inferences therefrom, and will affirm a conviction if the probative evidence and reasonable inferences drawn from the evidence could have led the jury to find a defendant guilty beyond a reasonable doubt. *Love v. State,* 721 N.E.2d 1244, 1245 (Ind.1999).

 The evidence shows that Defendant told Taylor that he wanted the shotgun in order to collect money from someone who owed him a debt. After Emberson had been killed, Defendant told Taylor and Baugh that he confronted the person who owed him money and pulled the gun out when Defendant and that person began to argue. Baugh specifically stated that Defendant claimed to have killed the man for money. In addition, when police examined Emberson's body and the crime scene, the upper left breast pocket of Emberson's shirt appeared to have been pulled open and down. From this evidence, the jury could reasonably infer that Defendant killed Emberson while attempting to take money from him and searched Emberson before or after he killed him in order to find some money.

 Defendant also claims that he merely intended to collect a debt from Emberson and did not intend to commit robbery as is required by the statute. Appellant's Br. at 7–8. However, the "law does not sanction the use of self-help with firearms as a debt collection device." *Sheckles v. State,* 501 N.E.2d 1053, 1055 (Ind.1986). Defendant's attempt to collect a debt by force does not negate the criminal intent element of robbery. *See id.* The evidence was ample to support the jury's verdict that Defendant was guilty of felony murder.

II

Defendant argues that it was improper for the trial court to enter judgment and impose sentence for both felony murder and reckless homicide. We agree.

 It is well-settled that a "defendant may not be convicted of both 'knowing or intentional' murder and felony murder for the killing of the same person." *Garrett v. State,* 714 N.E.2d 618, 621 (Ind.1999) (citing *Hicks v. State,* 544 N.E.2d 500, 505 (Ind.1989); *Sandlin v. State,* 461 N.E.2d 1116, 1119 (Ind.1984)). For the same reason — that "this case involves the homicide of only one person," *Sandlin,* 461 N.E.2d at 1119 (citing *James v. State,* 274 Ind. 304, 305, 411 N.E.2d 618, 619 (1980)) — Defendant may not be convicted of both felony murder and reckless homicide for killing the same person.

 When judgment of conviction cannot legally be entered on all counts upon which guilty verdicts have been returned, judgment is entered on one count and the remaining convictions are vacated. Defendant argues that we should vacate

---

**6.** The jury instruction for Defendant's felony murder charge read in part:

To convict the defendant the State must have proven each of the following elements:
The defendant, Eugene C. Ruffin;
1. killed,
1. another human being, namely: John Emberson,

1. while committing or attempting to commit robbery which is to knowingly, while armed with a deadly weapon, that is: a shotgun, take from the person or presence of John Emberson property, that is: United States Currency, by putting John Emberson in fear or by using or threatening the use of force on John Emberson.

his felony murder conviction because it was the last entered, citing *Clifft v. Indiana Dep't of State Revenue*, 660 N.E.2d 310 (Ind.1995). In *Clifft*, the Department of State Revenue assessed a controlled substance excise tax against the defendant. *See id.* at 313. The defendant was later convicted of criminal drug possession for the same drug offense. *See id.* We held that the criminal conviction constituted a second jeopardy for the same drug offense and must therefore be vacated. *See id.* In *Clifft*, the tax penalty and criminal prosecution were separate proceedings, pursued at different times. Here, however, Defendant's convictions for felony murder and reckless homicide resulted from charges prosecuted simultaneously in a single trial. Under such circumstances, there is no impediment to vacating either conviction.

### Conclusion

We affirm Defendant's conviction and 60–year sentence for felony murder and vacate Defendant's conviction and sentence for reckless homicide.

SHEPARD, C.J, and BOEHM, and RUCKER, JJ., concur.

DICKSON, J., concurs in result.