Anthony L. HOUSTON, Defendant–Appellant,

v.

STATE of Indiana, Plaintiff–Appellee.

No. 49S00–9901–CR–00061.

Supreme Court of Indiana.

June 30, 2000.

Kurt A. Young, Nashville, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Sarah E. Freeman, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

DICKSON, Justice

The defendant-appellant, Anthony L. Houston, and his co-defendant, Engai Maul,[1] were convicted of the June 9, 1997, murder[2] of Damon Simpson. Houston was also adjudicated a habitual offender. Houston appeals, claiming insufficient evidence and errors in admission of evidence.

### Sufficiency of the Evidence

■ The defendant first argues that the evidence was insufficient to support his conviction for murder. Our standard of review for sufficiency claims is well settled. We do not reweigh evidence or assess the credibility of witnesses; rather, we look to the evidence and reasonable inferences drawn therefrom that support the verdict and will affirm the conviction if there is probative evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Marcum v. State,* 725 N.E.2d 852, 863 (Ind. 2000); *Ruffin v. State,* 725 N.E.2d 412, 415 (Ind.2000); *Love v. State,* 721 N.E.2d 1244, 1245 (Ind.1999); *Taylor v. State,* 681 N.E.2d 1105, 1110 (Ind.1997). A verdict may be sustained based upon circumstantial evidence alone if that circumstantial evidence supports a reasonable inference of guilt. *Warren v. State,* 725 N.E.2d 828, 834 (Ind.2000); *Kriner v. State,* 699 N.E.2d 659, 663 (Ind.1998); *Taylor v. State,* 676 N.E.2d 1044, 1047 (Ind.1997); *Green v. State,* 587 N.E.2d 1314, 1315 (Ind.

---

1. We also decide today, in a separate opinion, Maul's appeal. *Maul v. State,* No. 49S00-9811-CR-729, 731 N.E.2d 438 (Ind., 2000).

2. Ind.Code § 35-42-1-1.

1992). Presence at the crime scene alone cannot sustain a conviction, but presence when combined with other facts and circumstances, such as companionship with the one engaged in the crime, and the defendant's course of conduct before, during, and after the offense, may raise a reasonable inference of guilt. *Hampton v. State,* 719 N.E.2d 803, 807 (Ind.1999); *Wright v. State,* 690 N.E.2d 1098, 1106 (Ind.1997).

■ The evidence most favorable to the verdict establishes that Maul and the defendant, Houston, were acquaintances of Simpson. Early on the date of the murder, both defendants, wearing red shirts or jackets, visited Simpson at his house. Steven Shepard and Anthony Sparkman, friends of Simpson, were also present. After Houston and Maul left, Simpson spent the remainder of the day with Shepard and Sparkman. Houston's mother testified that she saw her son at home on the evening of the murder and that she told the prosecutor on another occasion that a vehicle was parked in the driveway while her son was home and that she had "no idea what color the van was, it was dark outside...." Record at 894. Neither Houston nor his mother owned a dark-colored van, but on several occasions before the murder, Houston was seen riding in a dark-colored van.

Shortly after 11:00 p.m., Shepard observed a dark-colored van come down the street and park at the curb a short distance behind Simpson's car, but he did not see anyone get out of the van. Approximately five minutes later, Houston and Maul knocked at Simpson's door and were admitted. Maul, who was described as a light-skinned black man, was wearing a red shirt or jacket. Shepard spoke to them, but they did not respond, instead going directly to another room to talk to Simpson. Shepard left about 11:20 p.m., leaving Simpson alone with the two co-defendants. Around 11:30 p.m., a group of three to five African–American males walked from Simpson's front door and stood in the street arguing. A witness recognized Simpson's voice stating that he did not do what he was being accused of doing. They then saw and heard shots fired and saw Simpson trying to run away. Unidentified voices yelled that he did not go down and commanded: "get him." Record at 492. The assailants pursued Simpson, and more shots were fired. Simpson fell to the ground, fatally wounded. A voice was heard to say: "they got [him]." Record at 493. Two or three men got into the van on the passenger side, and another, described as a light-skinned black man wearing a red jacket, ran across a field toward a nearby interstate highway. The van pulled away quickly without illuminating its headlights. Immediately after the shooting, several neighbors called 911 to report the shots heard coming from Indianapolis Avenue. According to the timing of the 911 calls, the shooting probably occurred around 11:55 p.m.

Forensic evidence showed that Simpson had been shot eight times and that several of the shots would have been fatal. Ballistics experts testified that at least four guns and possibly six were used in the shooting, but no weapons were found at the murder scene. Some of the bullets recovered from Simpson's body could have been fired from a 9mm pistol or a .38–caliber revolver. Although no one saw either Houston or Maul carrying a gun on the day of the murder, there was testimony that Houston had previously been seen carrying a 9mm semi-automatic handgun, similar to one of the possible weapons used to shoot Simpson.

The police learned that Maul and Houston had been with Simpson shortly before his death and attempted to question each regarding the evening's events. Houston met with a police investigator. After receiving and acknowledging a police advisement of rights, Houston first attempted to conceal from police that he had been with Maul at Simpson's home on the day of the murder, but after obtaining assurances of police protection for his family, he made

additional statements to the police. One of the officers present at the interview testified that Houston then began to cry and, appearing very remorseful, told police that he did not mean for Simpson to die and asked the officer to apologize to Simpson's mother for him.

Thus, Houston was present at Simpson's home with Maul, arriving at the door just minutes after Shepard saw a dark-colored van park near Simpson's car. Houston had previously been seen in a dark-colored van. He and Maul were alone with Simpson at his home just minutes before the fatal shooting in the street. Houston was known to carry a gun similar to the one used to inflict some of the fatal wounds. Houston at first concealed facts from police regarding his presence at the murder scene, but his subsequent statement to the police implied an admission of his involvement in Simpson's murder.

Although recognizing that the evidence of guilt in this case is not especially strong, we nevertheless find that, considering the probative evidence and resulting reasonable inferences favorable to the verdict, a reasonable jury could have found the defendant guilty beyond a reasonable doubt.

## Admission of Evidence

■ The defendant next claims that the trial court erred in admitting certified court records regarding the arrest and conviction of Anthony Kimmons. Kimmons, a friend of Simpson, Houston, Maul, Shepard, and Sparkman, had been arrested on federal drug charges on May 30, 1997. During the first visit to Simpson's house on the day of the murder, Maul asked Simpson for the name of the lawyer who had represented Simpson on similar federal drug charges that were dismissed in October of 1996, based upon a successful motion to suppress evidence. This information was ostensibly for the purpose of assisting Kimmons in obtaining a lawyer to represent him. Although Kimmons did not testify at trial, the State presented records of Simpson's and Kimmons's arrests for similar drug offenses alleged to

have been committed in an area near Simpson's home and place of work and urged that the motive of Houston and Maul for killing Simpson was that Simpson was an informant against Kimmons, an acquaintance of the co-defendants. The defendant argues this evidence was not relevant because there was no evidence suggesting that he suspected Simpson of being an informant and, therefore, nothing connecting Kimmons to Simpson's death. The defendant also argues that the admission of the records "lent legitimacy" to the State's theory, which he claims was "wholly unsupported speculation." Brief of Defendant–Appellant at 26.

■ Only relevant evidence is admissible, and relevant evidence is any evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ind. Evidence Rule 401. As a general rule, evidence of motive is relevant in the proof of a crime. *Williams v. State,* 690 N.E.2d 162, 173 (Ind.1997); *Tompkins v. State,* 669 N.E.2d 394, 397 (Ind.1996). Even if proffered evidence or testimony is only marginally relevant, it is within the sound discretion of the trial court to admit it. *Thompson v. State,* 671 N.E.2d 1165, 1171 (Ind.1996); *Bieghler v. State,* 481 N.E.2d 78, 88–89 (Ind.1985). We review a trial court's ruling as to relevance for an abuse of discretion. *Anderson v. State,* 718 N.E.2d 1101, 1103 (Ind.1999); *Willsey v. State,* 698 N.E.2d 784, 793 (Ind.1998).

In this case, there was evidence from which motive might be inferred, including the relationships among the men, Simpson's statement denying having done something his attackers were accusing him of doing, and evidence that Kimmons was arrested a few days before Simpson's death. We conclude that the trial court did not abuse its discretion in determining that the records were relevant.

■ The defendant also argues that this evidence was unfairly prejudicial. Even if

evidence is relevant, it may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Ind. Evidence Rule 403. The defendant does not argue that the trial court erred in balancing prejudice and probative value or that the probative value was substantially outweighed by the prejudice, but instead argues that the prejudice is "manifest in light of the lack of other competent evidence to convict." Brief of Defendant-Appellant at 27. Trial courts are given wide latitude in weighing probative value against the danger of unfair prejudice, and we review that determination for abuse of discretion. *Anderson,* 718 N.E.2d at 1103; *Ingram v. State,* 715 N.E.2d 405, 408 (Ind. 1999). We find no abuse of discretion in the trial court's determination that the probative value of the certified records of federal criminal charges against Simpson and Kimmons, from which the jury might infer motive, was not substantially outweighed by unfair prejudice to the defendant.

### Conclusion

The judgment of the trial court is affirmed.

SHEPARD, C.J., and SULLIVAN and BOEHM, JJ., concur. RUCKER, J., dissents with opinion.

RUCKER, Justice, dissenting

I recognize of course our familiar standard for reviewing the sufficiency of the evidence needed to support a criminal conviction. For such claims we neither reweigh evidence nor judge witness credibility. *Perry v. State,* 638 N.E.2d 1236, 1242 (Ind.1994). We consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence. *Taylor v. State,* 681 N.E.2d 1105, 1110 (Ind.1997). We will affirm a conviction if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. *Id.* Nonetheless, we are duty bound to sift and probe the evidence to determine whether it is sufficient to prove each and every element of the crime and to determine whether the inferences made are reasonable. As Justice Hunter declared over three decades ago:

[I]f as a result of our probing and sifting the evidence most favorable to the State, we determine that the residue of facts is so devoid of evidence of probative value and reasonable inferences adduceable therefrom, as to preclude guilt beyond a reasonable doubt, we should so declare. A failure to do so is a rejection of our duty as an appellate tribunal and tantamount to the enunciation of a rule that any evidence no matter how infinitesimal or inferences drawn therefrom, whether based on speculation or conjecture, would be sufficient to establish guilt beyond a reasonable doubt.

*Liston v. State,* 252 Ind. 502, 250 N.E.2d 739, 743–44 (Ind.1969). After probing and sifting the evidence in this case I am convinced the facts most favorable to the State do not prove beyond a reasonable doubt that Houston is guilty or murder. At most, the evidence shows that he was merely present at the crime scene. I therefore dissent and would reverse the judgment of the trial court.