## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 31 2015, 9:04 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Michael G. Moore
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Tyler G. Banks
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Omar Davis, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | December 31, 2015 <br><br> Court of Appeals Case No. <br> 49A05-1506-CR-592 <br><br> Appeal from the Marion Superior Court, Criminal Division 5 <br><br> The Honorable Grant Hawkins, Judge <br><br> Trial Court Cause No. <br> 49G05-1412-F1-55698 |

**Bailey, Judge.**

# Case Summary

[1] Omar Davis ("Davis") was convicted of two counts of Attempted Murder, as Level 1 felonies,[1] for the shootings of George Powell ("Powell") and Fred Stokes ("Stokes"). Davis appeals one of his convictions, presenting the sole issue of whether there was sufficient evidence to support his conviction for the attempted murder of Powell. We affirm.

# Facts and Procedural History

[2] On the evening of December 2, 2014, Powell picked up two acquaintances, Davis and Devin Gilbert ("Gilbert"), from the Family Dollar at 30th Street and Keystone Avenue in Indianapolis. Powell then drove the group to Stokes's house, one half of a double located on the corner of Michigan and Oxford Streets. Powell knew Stokes because Stokes was a friend of Powell's father (Stokes called Powell "nephew"). The group went to Stokes's house because Gilbert "wanted to get his nose dirty" (Tr. 46), that is, use cocaine, and Powell knew he could get drugs from Stokes's next door neighbor.

[3] When the group arrived, they went to Stokes's back door. After Powell vouched for Davis and Gilbert, Stokes let all three men inside. Powell then

---

[1] Ind. Code §§ 35-42-1-1(1) & 35-41-5-1 (2014).

walked through the house to the front door, exited, and went next door to buy drugs. He was gone for approximately four to five minutes.

[4] While Powell was gone, Davis and Gilbert each pulled out a handgun and pointed it at Stokes. Stokes thought one gun looked like a .380 or a 9 mm pistol, and the other looked like a 9 mm. Davis and Gilbert ordered Stokes to the ground, searched his pockets, and removed money, a wallet, and his watch. Davis then went upstairs while Gilbert held Stokes at gunpoint. As Davis came back downstairs, the men heard a knock at the door. Gilbert ordered Stokes to crawl to the front door and then stand up. Stokes asked who was at the door, and Powell responded. Davis told Stokes: "you say anything I will kill you." (Tr. 107.) Gilbert said: "if you say anything you're dead." (Tr. 107.)

[5] Stokes then opened the door and yelled "run nephew run" (Tr. 51) as he pushed Powell backwards and ran. Stokes heard a gunshot and was hit in the right shoulder blade and fell down. When he got up, he saw Davis and Gilbert pointing guns at him. He ran toward Michigan Street and heard multiple gunshots ring out from what sounded like two different guns. Stokes eventually knocked on a neighbor's door and yelled for them to call the police. He then circled back to his house, where he found Powell moaning on the front porch. Powell had been shot twice in the head and once in the arm.

[6] Law enforcement and emergency personnel arrived quickly, and Stokes and Powell were transported to the hospital. Stokes was treated in the emergency room and discharged that night. Powell was hospitalized for three weeks,

during which he could not speak and was partially paralyzed on his right side. At the time of trial, his right arm was still injured and he had difficulty with speech and thought.

[7] During the ensuing investigation, a crime scene specialist from the Indianapolis Metropolitan Police Department photographed multiple bullet holes in the front door of Stokes's house. She also recovered eight spent cartridge cases from the living and dining rooms: six .380 auto and two 9 mm Lugar caliber cartridge cases. A forensic ballistics examiner determined that the six .380 caliber cartridge cases were fired from the same gun, and that a different gun fired both of the 9 mm cartridge cases.

[8] On December 19, 2014, the State charged Davis with two counts of Attempted Murder, as Level 1 felonies ("Count 1" for Powell and "Count 2" for Stokes); Robbery Resulting in Serious Bodily Injury, as a Level 2 felony[2] ("Count 3"); and Unlawful Possession of a Firearm by a Serious Violent Felon, a Level 4 felony[3] ("Count 4").

[9] A jury trial was held on May 18 and 19, 2015, at the conclusion of which Davis was found guilty of Counts 1 and 2 and not guilty of Count 3. The State moved to dismiss Count 4. On May 29, 2015, Davis was sentenced to thirty-five years

---

[2] I.C. § 35-42-5-1.

[3] I.C. § 35-47-4-5(c).

on Count 1 and thirty years on Count 2, with the sentences to be served consecutively.

[10] Davis now appeals his conviction for the attempted murder of Powell.

# Discussion and Decision

[11] Our standard of review for sufficiency of the evidence claims is well settled. We consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We do not assess the credibility of witnesses or reweigh evidence. *Id.* We will affirm the conviction unless "no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Id.* (quoting *Jenkins v. State*, 726 N.E.2d 268, 270 (Ind. 2000)). "The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict." *Id.* at 147 (quoting *Pickens v. State*, 751 N.E.2d 331, 334 (Ind. Ct. App. 2001)).

[12] A person who knowingly or intentionally kills another human being commits murder. I.C. § 35-42-1-1. A person attempts to commit a crime when, acting with the culpability required for commission of the crime, the person engages in conduct that constitutes a substantial step toward commission of the crime. I.C. § 35-41-5-1. "However, our supreme court has emphasized the importance of requiring specific intent to kill before a defendant can be convicted of attempted murder, despite that the culpability requirement for murder includes

the lesser standard of 'knowingly.'" *Perez v. State*, 872 N.E.2d 208, 211 (Ind. Ct. App. 2007), *trans. denied*.

[13] The State charged that on or about December 2, 2014, Davis "did attempt to commit the crime of Murder, which is to intentionally kill another human being, namely: George Powell, by engaging in conduct, that is: shooting a deadly weapon that is, a handgun, at and against the person of George Powell, with the specific intent to kill George Powell, which conduct constituted a substantial step toward the commission of said crime of Murder[.]" (App. 25-26.)

[14] Davis concedes that the State presented sufficient evidence to support his conviction for the attempted murder of Stokes because there was evidence that Davis and Gilbert "pointed guns at Stokes, hit him, threatened him and shot at him." (Appellant's Br. 4.) However, he argues that the State "failed to introduce similar evidence with respect to Powell," and thus there was insufficient evidence that he acted with specific intent to kill Powell. (Appellant's Br. 7.) Davis also argues that because there were multiple shooters, "[t]he jury was left to speculate who shot whom, which is insufficient to sustain a conviction." (Appellant's Br. 4.)

[15] With respect to identification, Stokes saw both Davis and Gilbert with handguns just before he and Powell were shot. Multiple shots were fired. Stokes was hit once and Powell was hit three times. After the shooting, police recovered eight spent cartridge casings from the crime scene. A forensic

ballistic examiner determined the casings were fired from two different handguns. This supports the inference that Davis was one of two active shooters in the home when Powell and Stokes were shot. Based on this evidence and the resulting reasonable inferences supporting the verdict, a reasonable jury could have found that Davis shot a deadly weapon at Powell. *See Houston v. State*, 730 N.E.2d 1247, 1249-50 (Ind. 2000) (holding there was sufficient evidence to support defendant's conviction for murder where there were multiple shooters, ballistics experts testified that four to six guns were used in the shooting, the victim was shot multiple times, and several of the wounds would have been fatal).

[16] With respect to intent, Indiana courts have held:

> Intent to kill may be inferred from the use of a deadly weapon in a manner likely to cause death or great bodily injury, in addition to the nature of the attack and circumstances surrounding the crime. *Gall v. State*, 811 N.E.2d 969, 975 (Ind. Ct. App. 2004). Intent to kill may be further established by a defendant's use of a deadly weapon against the victim coupled with an announced intention to kill. *Schilling v. State*, 268 Ind. 534, 536, 376 N.E.2d 1142, 1143 (1978). Further, our supreme court held that discharging a weapon in the direction of a victim is substantial evidence from which the jury could infer intent to kill. *Leon v. State*, 525 N.E.2d 331, 332 (Ind. 1988).

*Corbin v. State*, 840 N.E.2d 424, 429 (Ind. Ct. App. 2006).

[17] Here, before Stokes opened the door, Stokes asked Powell to identify himself. After Stokes opened the door, he yelled "run nephew run" (Tr. 51), further

confirming Powell's identity. Therefore, Davis was aware that Powell was on the other side of the door when he pointed a gun and fired in Stokes's direction. Moreover, the majority of the gunshots came after Stokes was shot in the back, supporting the inference that the shooters continued to shoot in Powell's direction after attempting to murder Stokes. The State therefore presented sufficient evidence that Davis had specific intent to kill Powell.

# Conclusion

There was sufficient evidence to support Davis's conviction for the attempted murder of Powell.

Affirmed.

Vaidik, C.J., and Crone, J., concur.