## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 12 2019, 9:12 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kimberly A. Jackson
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Joshua J. Farris,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | March 12, 2019<br><br>Court of Appeals Case No.<br>18A-CR-1853<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Kurt Eisgruber, Judge<br><br>The Honorable Steven J. Rubick, Magistrate<br><br>Trial Court Cause No.<br>49G01-1609-MR-35168 |

**Darden, Senior Judge.**

## Statement of the Case

Joshua Farris appeals his conviction of murder, a felony.[1] We affirm.

## Issue

Farris raises one issue, which we restate as: whether the State presented sufficient evidence to sustain his conviction.

## Facts and Procedural History

Jeannie Howard lived with John Cobb, but she had been involved in a romantic relationship with Farris. On the night of June 22, 2016, Howard wanted to go to a cookout at Brian Lankford's house. Cobb drove her there, with the intent to drop her off and pick her up later. They arrived after 10:30 p.m. Farris was present and greeted Cobb. Cobb recognized Farris and did not want to leave Howard with him, but Howard insisted on staying at the cookout. Cobb left after Howard agreed that she would call him when she was ready to come home. Howard never called Cobb. Instead, later that night Lankford drove Farris and Howard to Farris' mobile home on the east side of Indianapolis and dropped them off. The next day, Cobb returned to Lankford's house. Lankford told him Howard had left the cookout with Farris.

At 12:39 a.m. on June 24, 2016, Officer William Pang of the Indianapolis Metropolitan Police Department (IMPD) and other officers were dispatched to

---

[1] Ind. Code § 35-42-1-1 (2014).

the far east side of Indianapolis to investigate a report of a body found alongside a road. The officers arrived at a bridge on East Troy Avenue, where they met the two people who had reported finding the body. The officers next observed a nude woman's body, lying along the side of the road up against the wall of the bridge. A black dress had been placed over the woman's face.

[5] The officers noted that a clothes dryer sheet was stuck to the bridge wall near the body, and they also found drops of blood on the bridge wall. Officer Pang looked beneath the bridge and saw a black plastic trash bag laying on the ground. Detective Gary Toms, a crime scene investigator, and a deputy coroner arrived at the scene. The investigator found an empty antifreeze bottle in the trash bag under the bridge. There was a spot of what appeared to be blood on the trash bag. The coroner copied the body's fingerprints and gave them to Detective Toms, who went to IMPD offices, where he checked the fingerprint database and identified the deceased as Jeannie Howard.

[6] An autopsy was performed on Howard's body at 8:15 a.m. on June 24, 2016. The examiner determined the body was in the early stages of decomposition and concluded that Howard had died at least thirty-six hours before her body was found. There were four chopping-type wounds to her head, plus a tearing wound to one of her ears. The wounds fractured her skull, causing hemorrhaging inside the skull. The examiner later determined the wounds resulted from the use of a "significant amount of force." Tr. Vol. II, p. 180. The cause of death was ruled a homicide.

[7] After the autopsy, Detective Toms and other officers continued their investigation and learned that Howard had last been seen with Farris. On the night of June 24, 2016, Detective Toms and other officers went to Farris' mobile home, but no one was present.

[8] Next, Detective Toms and other officers went to Farris' mother's home. She did not know where Farris could be found. During the visit, an officer noticed that Farris' mother's car, a white Chevrolet Impala, was parked nearby. There appeared to be blood on the car's trunk. A witness had reported seeing Farris driving the Impala on June 23, 2016, near Farris' mobile home.

[9] Detective Toms obtained a search warrant for the Impala. He and a crime scene investigator searched the car at 2:44 a.m. on June 25, 2016. They found nothing in the passenger compartment, but the investigator smelled the odor of blood emanating from the trunk before they opened it. When they opened the trunk, they discovered the interior was spattered with a "significant" amount of blood. *Id.* at 115. In addition, blood had pooled in the spare tire well. Among other contents, the investigator found an "industrial sized wrench" with blood on it. *Id.* at 61. She also saw a fingerprint in the blood stain on the trunk.

[10] Later in the day on June 25, 2016, Detective Toms and other officers returned to Farris' residence, but he was still absent. They obtained a search warrant for the mobile home. During the search, officers discovered blood in a trash can on a porch. They also found a bucket in the kitchen sink. The bucket contained dark clothing and water mixed with bleach. In addition, a hatchet had been

placed on top of a cabinet in the kitchen, hidden out of sight. In Farris' bedroom, the officers discovered blood spatter on the ceiling and floor. They also found a large, still-damp blood stain on a mattress, which had been flipped over to cover the stain. There were items of women's clothing found on the bedroom floor, along with a clothes dryer sheet. The officers noticed another clothes dryer sheet on a hallway floor, by a back door. There was also a bloodstain on the floor near the back door.

[11] Subsequent serological testing confirmed the presence of blood on the bridge wall near Howard's body, and on the antifreeze bottle that was found underneath the bridge. In addition, testing confirmed the presence of blood on the Impala's trunk lid and rear bumper, the wrench found in the Impala's trunk, and in the Impala's spare tire well. Finally, testing revealed the presence of blood in multiple locations at Farris' mobile home: in the garbage can on the porch, on the bedroom carpet, the bedroom ceiling, the mattress, and on the floor by the back door. The hatchet was tested for blood, and the results were indeterminate.

[12] DNA testing of blood samples taken at the bridge, in the Impala, and in Farris' residence revealed the blood matched Howard's DNA profile. In addition, a fingerprint examiner found Farris' fingerprint on the empty antifreeze bottle. The examiner also identified Farris' fingerprint on the Impala's trunk lid, in a spot of blood.

[13] Officers continued to search for Farris, but he was not in Indianapolis, and he did not attempt to contact his parents. An officer later learned that Farris might be in Ocala, Florida and notified the United States Marshals' office in that area. Farris was arrested in Ocala on September 15, 2016, after he was found living in a tent behind a store. He was brought back to Indiana.

[14] On September 28, 2016, the State charged Farris with murder. Farris waived his right to a trial by jury, and the case was tried to the bench. Farris testified in his own defense at trial. He claimed that he had left Howard at his mobile home on the night of June 22, 2016. Farris further claimed he found her dead in his bed when he returned the next day. He stated that he had attempted to conceal the murder and had disposed of Howard's body at the bridge because he was innocent but was afraid he would be held responsible in any event. The court determined Farris was guilty of murder and imposed a sentence. This appeal followed.

## Discussion and Decision

[15] Farris argues that the State failed to prove that he killed Howard. When reviewing the sufficiency of the evidence to support a conviction, "'appellate courts must consider only the probative evidence and reasonable inferences supporting the verdict.'" *Sallee v. State*, 51 N.E.3d 130, 133 (Ind. 2016) (quoting *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2015)). It is not our role as an appellate court to assess witness credibility or to weigh the evidence. *Sage v. State*, 114 N.E.3d 923, 929 (Ind. Ct. App. 2018).

[16] We will affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id.* A verdict may be sustained based upon circumstantial evidence alone if that circumstantial evidence supports an inference of guilt beyond a reasonable doubt. *Houston v. State*, 730 N.E.2d 1247, 1248 (Ind. 2000).

[17] To obtain a conviction for murder as charged, the State was required to prove beyond a reasonable doubt that: (1) Farris (2) knowingly or intentionally (3) killed Howard. Ind. Code § 35-42-1-1. The evidence most favorable to the judgment establishes that Lankford drove Farris and Howard to Farris' mobile home late on the night of June 22, 2016, and Farris was the last person seen with Howard before she was killed.

[18] The medical examiner determined Howard most likely died at least thirty-six hours before her body was discovered after midnight on June 24, 2016. That timeframe supports a determination that Farris killed Howard after they arrived at Farris' mobile home.

[19] In addition, the police found two items that Farris could have used to inflict the fatal chopping-type wounds upon Howard: (1) the hatchet that had been hidden on top of a cabinet in Farris' kitchen; and (2) the blood-stained industrial-type wrench that was found in the Impala's trunk.

[20] Farris argued and speculated that someone else could have committed the murder, however, there was no sign of a break-in at his residence. To the contrary, the police had to forcibly enter his mobile home to execute the search

warrant.  Further, Farris had a motive:  jealousy over Howard's continued relationship with Cobb.

[21]  It is undisputable that Farris took extensive steps to conceal Howard's death.  On the other hand, he admitted that he flipped over his mattress to hide the blood stain.  He also admitted that he initially placed some blood-spattered items in a trash can on his porch, but he later took those items to an off-site dumpster.  The police found dark clothes soaking in a bucket of water mixed with bleach in Farris' kitchen sink, not far from where the hatchet had been hidden on top of a cabinet.  Finally, Farris admitted that he had discarded Howard's nude body along the side of a bridge before leaving the state.  He had intended to hurl her body off the bridge but was startled by an oncoming car and fled.  No matter how frightened Farris claimed to be, he asks us to overlook his callous treatment of Howard's body.

[22]  Farris argues that Cobb also had a motive to kill Howard, that is, jealousy of Farris.  Farris further claims, as he did during trial, that he attempted to conceal the murder and fled the state not because he was guilty of the murder, but rather because he believed he was being set up and framed.  These arguments are no more than a request that we reweigh the evidence in his favor, in contravention of our standard of review.  We find the State presented an overwhelming amount of sufficient circumstantial evidence to sustain Farris' conviction of murder as found by the trial court judge.  *See Kriner v. State*, 699 N.E.2d 659, 664 (Ind. 1998) (there was sufficient circumstantial evidence to sustain murder conviction; defendant was in the same area as the victim at the

time of the murder, the possible murder weapon was found nearby, Kriner had access to the weapon before the crime, and Kriner had a motive to kill the victim).

# Conclusion

[23] For the reasons stated above, we affirm the judgment of the trial court.

[24] Affirmed.

Mathias, J., and Tavitas, J., concur.