Engai MAUL, Defendant–Appellant,

v.

STATE of Indiana, Plaintiff–Appellee.

No. 49S00–9811–CR–729.

Supreme Court of Indiana.

June 30, 2000.

Monica Foster, Hammerle Foster Allen & Long–Sharp, Indianapolis, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Attorneys for Appellee.

DICKSON, Justice.

The defendant-appellant, Engai Maul, and his co-defendant, Anthony L. Houston,[1] were each convicted of the June 9, 1997, murder[2] of Damon Simpson. In this appeal, the defendant seeks reversal of his conviction on grounds of insufficient evidence, improper bolstering of a witness's testimony, and jury instruction errors. We affirm.

### Sufficiency of the Evidence

The defendant first argues that the evidence was insufficient to support his conviction for murder.

■ Our standard of review for sufficiency claims is well settled. We do not reweigh evidence or assess the credibility of witnesses; rather, we look to the evidence and reasonable inferences drawn therefrom that support the verdict and will affirm the conviction if there is probative evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Marcum v. State,* 725 N.E.2d 852, 863 (Ind.2000); *Ruffin v. State,* 725 N.E.2d 412, 415 (Ind. 2000); *Love v. State,* 721 N.E.2d 1244, 1245 (Ind.1999); *Taylor v. State,* 681 N.E.2d 1105, 1110 (Ind.1997). A verdict may be sustained based on circumstantial evidence alone if that circumstantial evidence supports a reasonable inference of guilt. *Warren v. State,* 725 N.E.2d 828, 834 (Ind.2000); *Kriner v. State,* 699 N.E.2d 659, 663 (Ind.1998); *Taylor v. State,* 676 N.E.2d 1044, 1047 (Ind.1997); *Green v. State,* 587 N.E.2d 1314, 1315 (Ind. 1992). Presence at the crime scene alone cannot sustain a conviction, but presence when combined with other facts and circumstances, such as companionship with the one engaged in the crime, and the course of conduct of the defendant before, during, and after the offense, may raise a reasonable inference of guilt. *Hampton v. State,* 719 N.E.2d 803, 807 (Ind.1999); *Wright v. State,* 690 N.E.2d 1098, 1106 (Ind.1997).

■ The evidence most favorable to the verdict establishes that Houston and the defendant, Maul, were acquaintances of Simpson. Early on the date of the murder, both defendants, wearing red shirts or jackets, visited Simpson at his house. Steven Shepard and Anthony Sparkman, friends of Simpson, were also present. After Houston and Maul left, Simpson spent the remainder of the day with Shepard and Sparkman. Shortly after 11:00 p.m., Shepard observed a dark-colored van come down the street and park at the curb a short distance behind Simpson's car, but he did not see anyone get out of the van. Approximately five minutes later, Houston and Maul knocked at Simpson's door and were admitted. Maul, who was described as a light-skinned black man, was wearing a red shirt or jacket. Shepard spoke to them, but they did not respond, instead going directly to another room to talk to Simpson. Shepard left about 11:20 p.m., leaving Simpson alone with the two co-defendants. Around 11:30 p.m., a group of three to five African–American males walked from Simpson's front door and stood in the street arguing. A witness recognized Simpson's voice stating that he did not do what he was being accused of doing. They then saw and heard shots fired and saw Simpson trying to run away. Unidentified voices yelled that he did not go down and commanded: "get him." Record at 605. The assailants pursued Simpson, and more shots were fired. Simpson fell to the ground, fatally wounded. A voice was heard to say: "they got [him]." Record at 606. Two or three men got into the van on the passenger side, and another, described as a light-skinned black

---

1. We also decide today, in a separate opinion, Houston's appeal. *Houston v. State,* 730 N.E.2d 1247 (Ind.2000).

2. Ind.Code § 35–42–1–1.

man wearing a red jacket, ran across a field toward a nearby interstate highway. The van pulled away quickly without illuminating its headlights. Sometime during the night, Maul called his former girlfriend and asked her to go to Indianapolis Avenue and "see what you see." Record at 739. She went back to sleep, and shortly afterward he called again, asking her if she was going.

Forensic evidence showed that Simpson had been shot eight times and that several of the shots would have been fatal. Ballistics experts testified that at least four guns and possibly six were used in the shooting, but no weapons were found at the murder scene. Some of the bullets recovered from Simpson's body could have been fired from a 9mm pistol or a .38–caliber revolver. Although no one saw either Houston or Maul carrying a gun on the day of the murder, there was testimony that Maul had previously been seen at Simpson's home with a long-barreled, older revolver, similar to the .38 caliber firearm that could have fired some of the bullets found in Simpson's body.

The police learned that Maul and Houston had been with Simpson shortly before his death and attempted to question each regarding the evening's events. Maul was not home when the police called at his residence, but they left a message asking him to call the investigating officer. Maul never contacted the police. After police interviewed and arrested Houston, a warrant was issued for Maul. Two months later, Maul was apprehended during a traffic stop after a police officer observed a car he knew to belong to an older resident of the neighborhood being driven recklessly by a young man. Thinking the car might be stolen, the officer followed it, and the driver of the car attempted to evade the police. Eventually, several police cars were involved in the pursuit. When stopped a short time later, Maul told police that his name was Eugene Washington. Finding that Maul did not match Washington's description, the officer checked other records and determined that they had found the defendant. When the officer asked the defendant if he was Engai Maul, he replied: "You got me." Record at 1047.

Thus, on the date of the murder, Maul was present at Simpson's home with Houston, appearing at the door within a few minutes after a dark-colored van arrived and parked near Simpson's car. Maul and Houston were with Simpson immediately before he was fatally shot by a small group of men, most of whom drove off in the dark-colored van. Maul matched the general description given for the one man who ran from the scene after the murder: a light-skinned black man wearing a red shirt or jacket. Later on the night of the murder, Maul placed two phone calls to his former girlfriend, urging her to go to the locale of the crime to find out what was happening. During the ensuing two-month period, Maul evaded police, even using an assumed identity at a traffic stop. Considering the probative evidence and resulting reasonable inferences favorable to the verdict, we conclude that a reasonable jury could have found the defendant guilty beyond a reasonable doubt.

### Bolstering Credibility

The defendant claims that the State improperly bolstered Shepard's credibility on several occasions by using Shepard's prior consistent statements on direct examination even though Shepard had not been impeached. He argues that these statements were hearsay and did not fall within the exception of Indiana Evidence Rule 801(d)(1)(B). The defendant acknowledges that at trial he did not object to the admission of this bolstering evidence and that generally such a claim would be forfeited, but nevertheless he urges that it should be reviewed in this case as fundamental error. To rise to the level of fundamental error, the error " 'must constitute a blatant violation of basic principles, the harm or potential for harm must be substantial, and the resulting error must deny the defendant fundamental due process.' " *Etienne v. State*, 716 N.E.2d 457, 462 (Ind.1999) (quoting *Wilson v. State*, 514 N.E.2d 282, 284 (Ind.1987)). *See also*

*Barany v. State,* 658 N.E.2d 60, 64 (Ind. 1995) (defining fundamental error as error "so prejudicial to the rights of the defendant as to make a fair trial impossible"). This is not fundamental error.

### Jury Instructions

The defendant contends that the trial court committed instruction errors with respect to circumstantial evidence and reasonable doubt.

■ The defendant argues that the trial court failed to instruct the jury that, when the evidence is wholly circumstantial, it must exclude every reasonable hypothesis of innocence. The State tendered a circumstantial evidence instruction that did not refer to the "hypothesis of innocence" requirement. In its instruction conference with counsel, the trial court expressed its view that there was direct evidence against Houston, but only circumstantial evidence against Maul, and suggested that any circumstantial evidence instruction should only apply with respect to Maul and should contain the "hypothesis of innocence" qualification. Faced with the prospect of an instruction that would apply only to Maul, Houston objected. In response, the State requested that no instruction on circumstantial evidence be given if its tendered instruction was denied. The trial court did not give the State's tendered instruction.

The defendant tendered no instruction on circumstantial evidence. Such a failure to act would normally preclude consideration of the issue on appeal. *Franklin v. State,* 715 N.E.2d 1237, 1241 (Ind.1999); *Bunch v. State,* 697 N.E.2d 1255, 1257 (Ind.1998); *Sanchez v. State,* 675 N.E.2d 306, 308–09 (Ind.1996). Urging exemption from this forfeiture rule, the defendant argues that the purpose of the rule is to assure that trial courts have an opportunity "to correct injustice before it occurs." Reply Brief of Defendant–Appellant at 2. He argues that forfeiture is not required here because the trial court was fully aware of the issue.

Maul's counsel, however, did not advise the trial court that he desired the instruction. As a result, not only was the jury not instructed that "[w]here proof of guilt is by circumstantial evidence only, it must be so conclusive in character and point so surely and unerringly to the guilt of the accused as to exclude every reasonable theory of innocence," IND. PATTERN JURY INSTRUCTION (CRIMINAL) No. 12.01 (1991), but it was also not instructed that "it is not necessary that facts be proved by direct evidence" and that circumstantial evidence is "an acceptable means of proof." *Id.* Maul thus may have benefited from the absence of a jury instruction expressly authorizing and emphasizing circumstantial evidence as a proper basis for a guilty verdict. This example further supports our rule prohibiting the claim of instruction error on appeal absent a specific, timely objection at trial. Ind. Trial Rule 51(C).

■ The defendant also attempts to overcome procedural default by asserting that the trial court's omission constitutes "fundamental error." It does not. *See Franklin,* 715 N.E.2d at 1241; *Bunch,* 697 N.E.2d at 1257; *Whatley v. State,* 685 N.E.2d 48, 49–50 (Ind.1997).

Furthermore, the defendant claims fundamental error in the trial court's instruction regarding reasonable doubt, notwithstanding the fact that this Court expressly approved and recommended the instruction in *Winegeart v. State,* 665 N.E.2d 893 (Ind.1996). We have recently reexamined the issue and affirmed the giving of an identical instruction. *See Williams v. State,* 724 N.E.2d 1093, 1097 (Ind.2000). We decline to revisit the matter and find no error on this claim.

### Conclusion

The judgment of the trial court is affirmed.

SHEPARD, C.J., and SULLIVAN, BOEHM, and RUCKER, JJ., concur.