Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT:

**ROSS G. THOMAS**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GEORGE P. SHERMAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| RICHARD A. PERKEY, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 20A03-1303-CR-77 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ELKHART SUPERIOR COURT
The Honorable Evan S. Roberts, Judge
Cause No. 20D01-1110-FB-18

**March 6, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**SHEPARD, Senior Judge**

Richard Perkey challenges the admission of certain witness testimony and the State's comments during closing argument at his trial for the offense of rape as a class B felony. We affirm.

## FACTS AND PROCEDURAL HISTORY

J.G. and her boyfriend were friends with Derek Perkey ("Derek"). Derek's father Richard Perkey owned a trailer but was not staying there on a regular basis, so Derek allowed J.G. and her boyfriend to stay there. Events occurred that caused Perkey to move back into the trailer and to tell J.G. and her boyfriend to move out.

One night prior to J.G. moving out, she was sleeping at the trailer by herself. Perkey let himself into the trailer, entered J.G.'s room, and got into her bed. After a struggle, Perkey forced her to engage in sexual intercourse. J.G. was able to get away from Perkey and ran to a neighboring trailer for help. The police were called, and they eventually took Perkey into custody.

The State charged Perkey with rape, and a jury found him guilty.

## ISSUE

Perkey contends that the trial court abused its discretion by admitting certain hearsay testimony into evidence and by allowing the State to comment on that testimony in closing argument.

## DISCUSSION AND DECISION

The admissibility of evidence is within the sound discretion of the trial court, and we will not disturb its decision absent a showing of abuse of that discretion. *Gibson v. State*, 733 N.E.2d 945 (Ind. Ct. App. 2000).

2

Prior to J.G. testifying at trial, Deputy Minder, the first officer to arrive at the scene, testified that J.G. told him she was in bed when Perkey crawled into bed with her and began putting his hands on her body. She asked Perkey to stop, but he did not heed her request. Tr. pp. 80-81. Deputy Minder testified J.G. told him that Perkey put his hand over her mouth saying, "What are you going to do? Scream[?]" as he took her down the hall to his bedroom where he forced her to engage in sexual intercourse. *Id.* at 81. Deputy Minder also testified J.G. said she was afraid Perkey would hurt her if she fought him. *Id.* Of Deputy Minder's twenty-two pages of testimony, these statements consisted of one page.

And likewise, Richard Newman's testimony regarding J.G.'s statements of the incident amounted to three lines in fourteen pages of testimony. Newman, the Fire Chief and an EMT, rode in the ambulance with J.G. At trial he testified simply that she told him the perpetrator was her landlord and that he had overheard her conversation with her aunt in which she stated that she woke up at 5 a.m. with her landlord crawling into bed with her. *Id.* at 130.

Sara Yoder, the registered nurse who treated the victim in the hospital, testified that as part of her patient history J.G. stated that she was home alone, and her landlord let himself into the residence and had sexual intercourse with her. *Id.* at 147-48. As with the other statements, this was a single statement in twenty-three pages of testimony.

Beverly Hibshman, the grandmother of J.G.'s boyfriend, testified the victim told her that her landlord raped her and that she felt dirty. *Id.* at 167, 169, 171.

Following J.G.'s own testimony at trial, two other witnesses testified about her statements to them. First, in response to a question about what information he had about J.G. prior to meeting her, Dr. Yeager, the emergency room physician, testified it was reported to him that she had been sleeping when her landlord came into her bedroom and attempted to have sexual intercourse with her. *Id.* at 310.

The final testimony about which Perkey complains is that of Detective Osterday. He testified the victim told him her landlord Perkey got into bed with her, and, although she was yelling at him to leave, he was rubbing her buttocks and legs and attempting to coerce her into having sex with him. She told Detective Osterday that when she tried to escape, Perkey became angry and shoved her down the hallway into a back bedroom. There, he made promises of money, a car, and a job, but still she refused contact. Eventually, Perkey held her down and forced her to engage in sexual intercourse. *Id.* at 348-49.

Perkey complains that this testimony constituted "drumbeat repetition" of hearsay that was prejudicial to him and says that the admission of that testimony and the prosecutor's references to it are reversible error. He cites *Modesitt v. State*, 578 N.E.2d 649 (Ind. 1991), in which a child's mother, a welfare caseworker, and a psychologist all testified at length and in detail as to what the child told them regarding what Modesitt had done to her. Their testimony occurred prior to the victim testifying and was admitted over objection. Our Supreme Court determined that permitting the three witnesses to repeat the accusations of the victim prior to the victim testifying unduly prejudiced the jury.

4

Here, the witnesses, especially those who testified prior to J.G. testifying, did not give full, detailed accounts of the incident as did the witnesses in *Modesitt*. Moreover, unlike the testimony in *Modesitt*, the witnesses' testimony in the present case was admitted without objection.

Thus, as the Supreme Court did in *Maul v. State*, 731 N.E.2d 438, 440-41 (Ind. 2000), we conclude the lack of objection to various witnesses' statements means that there was no preservation of error and no fundamental error.

CONCLUSION

We therefore affirm Perkey's conviction of rape.

Affirmed.

BAKER, J., and BAILEY, J., concur.