## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 14 2016, 6:02 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Tia R. Brewer
Grant County Public Defender
Marion, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Karl Scharnberg
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Shawn D. Harbert,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

January 14, 2016

Court of Appeals Case No.
27A04-1505-CR-334
Appeal from the Grant Superior
Court.
The Honorable Jeffrey Todd, Judge.
Cause No. 27D01-1410-FB-44

**Barteau, Senior Judge**

# Statement of the Case

Shawn D. Harbert appeals from his conviction of Class B felony dealing in cocaine.[1] We affirm.

# Issue

The sole issue Harbert raises for our review is whether there is sufficient evidence to support his conviction.

# Facts and Procedural History

On February 13, 2014, Detective Mark Stefanatos of the Grant County J.E.A.N. Team Drug Task Force informed other J.E.A.N. Team detectives he had received information from a confidential informant, Jacob Larkey, about a possible controlled drug buy. Larkey stated that he could arrange for an undercover officer to purchase one gram of cocaine for $100 from an individual named "Steve" at a Circle K convenience store in Marion, Indiana. Larkey would be the introducing party in the controlled buy.

J.E.A.N. Team Detective Leland Smith arranged to meet Larkey to conduct the buy. J.E.A.N. Team Detective Josh Ziegler immediately headed to the location of the controlled buy in order to examine the area and establish a vantage point

---

[1] Ind. Code § 35-48-4-1(a) (2006).

to record the transaction from across the street. Two other detectives went to the location to establish surveillance.

[5] Meanwhile, Detective Smith gathered audio visual recording devices from the J.E.A.N. Team office to record and monitor the controlled buy. He also photocopied the buy money. While he was preparing for the buy, Detective Smith was notified that he needed to leave the office quickly because people were already waiting at the location of the controlled buy. After reaching the front of the Circle K, Detective Smith noticed a reddish Jeep that was backed into a parking spot almost directly in front of the store, and a man was sitting inside.

[6] Detective Smith exited his vehicle, and walked toward the convenience store's doors, until he recognized and greeted Larkey, who was standing next to the open passenger-side door of the Jeep. Harbert was seated in the driver's seat. Detective Smith leaned in the passenger side of the Jeep as Larkey rested on the seat facing the back with his legs out of the vehicle. Larkey asked Harbert, "[D]o you got the shit so I can sell it to him?" Tr. p. 50. Harbert's right arm was extended upwards toward the rear of the Jeep and his left hand was cupped and near the steering wheel, resting on his leg. Larkey extended his empty, open hand. Harbert's left hand was momentarily out of view behind Larkey's zippered jacket. However, Harbert's right hand came down into view toward the area of Larkey's open right hand, which was briefly obscured, and the center console. Harbert's empty right hand then immediately extended toward Smith, and Larkey's open right hand held what appeared to be a baggie

containing a substance. Larkey slid the baggie across the passenger seat to Detective Smith, who handed $100 in cash to Harbert and picked up the baggie.

[7] Subsequent testing revealed that the substance inside the baggie was .4 grams of pure cocaine. Harbert told Detective Smith to keep it in his pocket, and Smith complied. As Larkey moved away from the Jeep, Detective Smith asked for Harbert's phone number, but Harbert refused. The entire transaction was concluded in a matter of seconds.

[8] Harbert immediately left the Circle K. Detective Smith recited Harbert's license plate number so that it could be recorded. Detective Ziegler, who had observed and recorded the controlled buy from across the street, followed Harbert and also obtained the license plate number. Larkey and Detective Smith got into Detective Smith's vehicle where they discussed Harbert's identity—a man Larkey believed was named Steve—and arranged for Larkey to provide Detective Stefanatos with Harbert's telephone number.

[9] The State charged Harbert with dealing in cocaine as a Class B felony, and a jury found Harbert guilty of that charge. The trial court sentenced Harbert to eleven years, with six years executed and five years suspended to probation. Harbert now appeals.

## Discussion and Decision

[10] Harbert challenges the sufficiency of the evidence to support his conviction. When reviewing claims of insufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. *Jordan v. State*, 656 N.E.2d 816,

817 (Ind. 1995), *reh'g denied*. Rather, we look to the evidence and the reasonable inferences therefrom that support the verdict. *Id.* We will affirm the conviction if there exists evidence of probative value from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. *Id.*

[11] The State was required to establish beyond a reasonable doubt that Harbert knowingly or intentionally possessed with intent to deliver cocaine. Ind. Code § 35-48-4-1.

[12] Harbert argues that there is insufficient evidence to support his conviction, contending the evidence only shows a transaction between Larkey and Detective Smith, but no involvement on Harbert's part with the cocaine. In particular, Harbert claims that the only evidence of his involvement was Detective Smith's testimony. He also argues that Larkey should have been patted down prior to the buy to establish that the cocaine did not come from him. Harbert's argument is a request to reweigh the evidence, a task we will not undertake. *Jordan*, 656 N.E.2d at 817.

[13] The audio visual recording of the controlled buy established that Larkey asked Harbert if he had the cocaine for sale to Detective Smith. Harbert's right arm was extended upwards toward the rear of the Jeep and his left hand was cupped and near the steering wheel, resting on his leg. Larkey extended his empty, open hand. Harbert's left hand was momentarily out of view behind Larkey's zippered jacket. However, Harbert's right hand came down into view toward the area of Larkey's open hand, which was briefly obscured, and the center

console. Harbert's empty right hand then immediately extended toward Smith, and Larkey's open right hand came into view appearing to hold a baggie containing a substance. Larkey slid the baggie across the passenger seat to Detective Smith, who handed $100 in cash to Harbert and picked up the baggie. Harbert told Smith to keep it, meaning the baggie, in his pocket, and Smith complied. When asked, Harbert did not give Smith his telephone number. Testing of the substance identified it as cocaine. There is sufficient evidence to support Harbert's conviction.

A verdict may be affirmed based solely on circumstantial evidence if that circumstantial evidence supports a reasonable inference of guilt. *Maul v. State*, 731 N.E.2d 438, 439 (Ind. 2000). The evidence presented at trial supports a reasonable inference of guilt. Harbert presented his version of the events to the jury, but they chose to disbelieve it.

# Conclusion

In light of the foregoing, we affirm the trial court's decision.

Affirmed.

Baker, J., and Najam, J., concur.