# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Sep 17 2018, 9:25 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

John P. Tuskey
Mishawaka, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Monika Prekopa Talbot
Supervising Deputy Attorney
General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Philip D. Hartsough, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | September 17, 2018 <br><br> Court of Appeals Case No. 18A-CR-545 <br><br> Appeal from the Elkhart Circuit Court <br><br> The Honorable Michael A. Christofeno, Judge <br><br> Trial Court Cause No. 20C01-1702-F5-46 |

**Altice, Judge.**

## Case Summary

[1] Philip D. Hartsough was convicted following a bench trial of possession of methamphetamine as a Level 5 felony. He appeals and claims that the State did not present sufficient evidence that the methamphetamine, found on the ground near his feet during his arrest, was his.

[2] We affirm.

## Facts & Procedural History

[3] As part of their duties on February 24, 2017, Goshen Police Department Officers Zachary Miller and Cody Brown were assigned to serve arrest warrants. At that time, Hartsough had one or more outstanding warrants in Elkhart County. Officers Miller and Brown were advised, as they began their shift, that a vehicle belonging to Hartsough was parked around the 300 block of South Seventh Street, which "is a well-known area for . . . drug activity[,]" particularly methamphetamine. *Transcript Vol. II* at 14-15. Around 4:40 a.m., Officers Miller and Brown went to that area and observed a parked pick-up truck, which they identified as belonging to Hartsough. The officers noticed an illuminated radio light inside the truck, and, using a flashlight, Officer Miller looked inside and saw a man later identified as Hartsough "hunched over" the steering wheel. *Id.* at 17. Officer Miller announced his presence and both officers gave Hartsough verbal commands to exit the vehicle.

[4] Because Hartsough was not exiting the car as ordered, Officer Miller became concerned for officer safety, and he backed away and drew his firearm. About

this time, Hartsough opened the door. With Officer Miller's assistance, Hartsough stepped out of the vehicle with his hands out and open. Hartsough was sluggish, slow to react, and his speech was slow, which indicated to the officers that Hartsough might be under the influence of an illegal substance. As Hartsough stepped out, Officer Miller took his arms, and Officer Brown told him to turn around and put his hands behind his back. Officer Brown's body camera was operating at the time, and photos from the video footage showed that there was nothing on the pavement near the driver's side door as Hartsough was starting to step out.

[5] The officers handcuffed Hartsough, and, during Officer Brown's search of Hartsough, he found in Hartsough's front jacket pocket a BIC ballpoint pen casing, which the officers recognized as an object commonly used to ingest illegal substances. Officer Miller looked down at the ground where Hartsough had exited the vehicle and saw, within a few inches of Hartsough's feet, two clear baggies, one of which contained a white, crystal-like substance and the other contained a yellow-orange piece of paper with "N7" on it. *Id.* at 35. Officer Miller picked up the baggies from the wet pavement, noting that the baggies were dry. The crystal-like substance later tested positive for methamphetamine.

[6] On February 27, 2017, the State charged Hartsough with one count of possession of methamphetamine, enhanced from a Level 6 to a Level 5 felony based on a previous conviction for dealing in a controlled substance. A bench trial was held on September 6, 2017. Prior to trial, Hartsough stipulated that

the crystal-like substance recovered by the officers was 0.35 grams of methamphetamine.

[7] At trial, Officer Miller testified that as he and Officer Brown were walking toward the residence on South Seventh Street where they believed Hartsough to be staying, they saw the parked pick-up truck and approached it. He explained that, when checking a vehicle, it was routine for officers to not only look inside of it, but also check around the exterior of it to view what, if anything, was on the ground in the area. Officer Miller testified that he looked on the ground with a flashlight around the pick-up truck and saw nothing other than the pavement and curb where the vehicle was parked. He confirmed that there was no "foot traffic" or anyone walking by the area at the time that he and Officer Brown were arresting Hartsough. *Id.* at 41. Officer Miller acknowledged that he did not see anything drop from Hartsough's hands, lap, body, but noted that he was "focused on [Hartsough's] hands." *Id*. at 38.

[8] Officer Brown testified to serving warrants with Officer Miller on the night in question, noting that the first time they went to the residence on South Seventh Street, Hartsough was not in his vehicle, but was when they returned at 4:40 a.m. Officer Brown recalled the pavement being wet at that time due to rain. Officer Brown said that he and Officer Miller gave multiple commands for Hartsough to exit the vehicle, but he "wasn't complying." *Id*. at 50. He estimated it took five to eight verbal commands before Hartsough complied. Officer Brown activated his body camera as he was standing on the passenger side of the vehicle, before walking over to the driver's side to arrest Hartsough.

The camera's video footage was admitted at trial without objection and played for the trial court. Officer Brown testified to discovering in Hartsough's pocket the BIC pen casing, which he said "is commonly used to ingest narcotics" and "is commonly referred to as a tooter." *Id.* at 56. Officer Brown testified that he did not observe Hartsough make furtive movements while in the truck, but noted that he could not see Hartsough's hands at that time. Officer Brown did not see anything drop from Hartsough's hands, lap, pocket, pants, or jacket.

[9] The trial court took the matter under advisement, and on December 5, 2017, issued an order finding Hartsough guilty as charged. In its order, the trial court observed, "While the Defendant testified that he did not have any drugs on him or in the vehicle, the [trial] Court found the Defendant's testimony to be unreliable." *Appellant's Appendix Vol. II* at 45. The trial court continued,

> There is no evidence to suggest that the officers planted the methamphetamine. There is no evidence to suggest that someone else planted the methamphetamine. The only reasonable conclusion is that the Defendant [] Hartsough deposited the methamphetamine on the ground outside of his vehicle so that he could make the very argument which he made to the Court, that being that he did not know it was methamphetamine and he does not know how it got to be outside of his vehicle.

*Id.* at 45-46. The trial court also found "unbelievable" Hartsough's claim that he thought it was a complete pen that was in his pocket. *Id.* at 46. Following a sentencing hearing, the trial court imposed a six-year sentence at the Indiana Department of Correction. Hartsough now appeals.

# Discussion & Decision

[10]   Hartsough contends that the State failed to present sufficient evidence to convict him of possession of methamphetamine. When reviewing a conviction for the sufficiency of the evidence, we do not reweigh evidence or reassess the credibility of witnesses. *Walker v. State*, 998 N.E.2d 724, 726 (Ind. 2013). We view all evidence and reasonable inferences drawn therefrom in a light most favorable to the conviction and will affirm "if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt." *Id.* (quoting *Davis v. State,* 813 N.E.2d 1176, 1178 (Ind. 2004)). It is not necessary that the evidence overcome every reasonable hypothesis of innocence; rather, the evidence is sufficient if an inference may reasonably be drawn from it to support the conviction. *Drane v. State*, 867 N.E.2d 144, 147 (Ind. 2007).

[11]   To convict Hartsough of Level 5 felony possession of methamphetamine as charged, the State was required to prove that he: (1) knowingly or intentionally (2) possessed methamphetamine, and (3) the amount of the drug was less than five grams and an enhancing circumstance applied. *See* Ind. Code § 35-48-4-6.1(a), (b)(2), 35-48-1-16.5(1). On appeal, Hartsough does not challenge that the substance was methamphetamine, the amount of it, or that he had a prior qualifying conviction to elevate his offense. Rather, his argument on appeal is that the State failed to prove that the methamphetamine found on the ground near his feet belonged to him. Hartsough urges that it is undisputed that he

exited the vehicle with his hands out and open, and because the officers did not see anything fall from his lap or body, or otherwise see him make furtive gestures, there was insufficient evidence from which to conclude that Hartsough disposed of the contraband as he stepped out of the pick-up truck. We disagree.

[12] The State presented evidence that, as the officers were serving arrest warrants in an area known for drug activity, they found Hartsough slumped over in the driver's seat of his vehicle. Officer Miller testified that as he approached the parked pick-up truck, he looked, but did not see, anything on the ground around the vehicle. Consistent with Officer Miller's testimony, Officer Brown's body-camera footage did not show anything on the pavement as Hartsough exited through the driver's-side door. Indeed, Hartsough does not dispute that there were no baggies on the ground near the driver's side door before he exited the truck. While Officer Brown was searching Hartsough, Officer Miller saw the two clear baggies on the ground, a few inches from Hartsough's feet. The officers both testified that there were no people walking by the area during the arrest. Officer Miller also testified that the pavement was wet from rain, but the baggies were dry, supporting the inference that they had been on the ground only for a short period of time. Although Hartsough testified that he did not have any drugs on him or in the vehicle, the trial court found his testimony in that regard to be "unreliable." *Appellant's Appendix Vol. II* at 45. Similarly, although Hartsough testified he did not know that the pen found in his pocket was hollow, the trial court found such testimony was "also [] unbelievable." *Id.* at 46.

[13] Direct evidence of Hartsough discarding the methamphetamine is not required, as circumstantial evidence alone is sufficient to sustain a conviction. *Maul v. State*, 731 N.E.2d 438, 439 (Ind. 2000); *Floyd v. State*, 791 N.E.2d 206, 210 (Ind. Ct. App. 2003), *trans. denied*. Based on the record before us, we find that the State presented sufficient evidence to convict Hartsough of Level 5 felony possession of methamphetamine.

[14] Judgment affirmed.

Brown, J. and Tavitas, J., concur.