## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Oct 24 2018, 7:27 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Matthew J. McGovern
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Livan A. Ruibal, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | October 24, 2018 <br><br> Court of Appeals Case No. 18A-CR-523 <br><br> Appeal from the Floyd Superior Court <br><br> The Honorable Maria D. Granger, Judge <br><br> Trial Court Cause No. 22D03-1610-F5-2103 |

**Altice, Judge.**

## Case Summary

[1] Following a jury trial, Livan A. Ruibal was convicted of burglary as a Level 5 felony and theft as a Class A misdemeanor. On appeal, Ruibal argues that the State presented insufficient evidence to support his convictions.

[2] We affirm.

## Facts & Procedural History

[3] Around 2:40 a.m. on October 4, 2016, a burglar alarm was tripped at a Verizon Wireless (Verizon) store located in a strip mall on Grant Line Road in New Albany. New Albany police officer Ronald Gaines was the first officer at the scene, arriving about two to three minutes after being dispatched. New Albany police officer Corey Schneider and others arrived on the scene seconds later. Officer Gaines drove past the store and parked near a wooded area. The other responding officers positioned themselves around the store to set up a perimeter.

[4] Officer Gaines was positioned at the edge of the tree line and made eye contact with a male suspect, who then immediately fled, running towards the tree line. Officer Gaines exited his patrol car and ordered the suspect to stop, but the suspect kept running. Officer Gaines knew the area well and went around the wooded area in order to cut off a possible escape route to the east along some railroad tracks. While Officer Gaines was moving to his new position, another suspect ran behind him, approximately twenty yards away.

[5]     In the meantime, as Officer Schneider walked along the back of the strip mall where the Verizon store was located, he observed a hole in the wall. Officer Schneider then saw a man, later identified as Ruibal, running out of the wooded area wearing black clothes, a black ski mask, and a black backpack.[1] Officer Schneider ordered Ruibal to the ground, but Ruibal turned around and started running back toward the wooded area. About halfway back, Ruibal gave up and stopped. He then followed Office Scnheider's commands, first removing his backpack and setting it on the ground, and then lying on the ground himself. The ski mask and backpack were on the ground next to Ruibal when Officer Schneider took him into custody.

[6]     Ruibal was the first of four suspects discovered in the area[2] and taken into custody. Ruibal had a Florida identification on his person.[3] In a nearby parking lot, Officer Gaines located a Ford Expedition with a Florida license plate. During a subsequent search of the vehicle, officers found receipts for tools, one being a receipt for a rotary hammer and a cut-off wheel and another for an angle grinder and some abrasive blades. Inside Ruibal's backpack, officers discovered a sledgehammer, a reciprocating saw, and additional tools.

---

[1] Ruibal was the individual who crossed behind Officer Gaines. Ruibal then encountered Officer Schneider. Officer Gaines could see what was transpiring between Officer Schneider and Ruibal. Officer Gaines waited until Ruibal was secured by Officer Schneider and then he continued to the railroad tracks to maintain the perimeter. He could hear other suspects moving through the wooded area.

[2] A second suspect was found crawling on his stomach in a nearby ditch and two others hid in the wooded area until they were apprehended by a K9 officer.

[3] The other three suspects were also from Florida.

A second backpack identical to the one carried by Ruibal was located near the Verizon store and contained an angle grinder, hammer drill, a headlamp flashlight, gloves, and tape, among other things.

[7]   The hole in the back wall of the building was created by cutting and knocking out bricks and was large enough for a person to pass through.[4]  Looking through the hole, the officers could see that a safe inside the Verizon store had been cut and pried open.  There were three electronic devices missing from the store that were later recovered from the backpack of one of the last suspects apprehended.  The stolen property included two phones and a tablet, which collectively were valued at $1100-$1200.  The store manager gave no one permission to enter the store that night or early morning and take property.

[8]   On October 6, 2016, the State charged Ruibal with Count I, burglary as a Level 5 felony; Count II, criminal mischief as a Class A misdemeanor; Count III, resisting law enforcement as a Class A misdemeanor; and Count IV, theft as a Class A misdemeanor.  A jury trial was held on January 2 and 3, 2018.  At the start of the trial, the court granted the State's motion to dismiss Count III.  At the conclusion of the evidence, the jury found Ruibal guilty of the remaining counts.  The trial court held a sentencing hearing on January 31, 2018.  At that hearing, the trial court granted the State's motion to dismiss Count II.  The trial court then sentenced Ruibal to five years on Count I and assessed fines and

---

[4] A second, smaller hole in the building was also discovered.  It was believed that this hole was created in order to access an electrical outlet for operating the tools.

costs on Count IV.  Ruibal now appeals.  Additional facts will be provided as necessary.

## Discussion & Decision

[9] Ruibal argues that the State presented insufficient evidence to support his convictions.  In reviewing a challenge to the sufficiency of the evidence, we neither reweigh the evidence nor judge the credibility of witnesses.  *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005).  Considering only the evidence and the reasonable inferences supporting the verdict, our task is to determine whether there is substantial evidence of probative value from which a reasonable jury could find the defendant guilty beyond a reasonable doubt.  *Moore v. State*, 652 N.E.2d 53, 55 (Ind. 1995).  Moreover, a conviction may be based purely on circumstantial evidence.  *Id*.

> We will not disturb a verdict if the jury could reasonably infer that the defendant is guilty beyond a reasonable doubt from the circumstantial evidence presented. On appeal, the circumstantial evidence need not overcome every reasonable hypothesis of innocence. It is enough if an inference reasonably tending to support the verdict can be drawn from the circumstantial evidence.

*Id*. (citations omitted).  Although presence at a crime scene alone is insufficient to sustain a conviction, presence combined with other facts and circumstances, including the defendant's course of conduct before, during, and after the offense, may raise a reasonable inference of guilt.  *Maul v. State*, 731 N.E.2d 438, 439 (Ind. 2000).

[10] To support Ruibal's conviction for burglary as a Level 5 felony, the State was required to prove that Ruibal "broke and entered the building or structure of another person [Verizon], with intent to commit a felony or theft in it." Ind. Code § 35-43-2-1. To support his conviction for theft as a Class A misdemeanor, the State was required to prove that Ruibal knowingly or intentionally exerted unauthorized control over the property of Verizon with intent to deprive Verizon of any part of the use or value of the property. *See* I.C. § 35-43-4-2(a)

[11] Ruibal argues that the evidence is insufficient to sustain his convictions because the State's evidence is entirely circumstantial and only tends to establish a suspicion of guilt. As set forth above, police were dispatched in response to a burglar alarm at a Verizon store in the middle of the night. Within minutes of the alarm being triggered, Ruibal, who was wearing black clothing and a black ski mask, was seen running in the area near the Verizon store. Upon encountering a police officer and being ordered to stop, Ruibal reversed directions and ran a short distance before surrendering.

[12] Ruibal carried a black backpack that contained a reciprocating saw, a hammer, and other tools. A backpack identical to the one carried by Ruibal was discovered near the Verizon store and it too contained various tools. Electronic items taken from the Verizon store were found in a backpack carried by one of three other suspects who were found hiding or attempting to flee from the area. A hole in the back wall of the Verizon store, large enough for a person to pass through, had been created by cutting through brick. The safe inside the store

had been cut and pried open.  In addition, Ruibal carried a Florida identification card and a vehicle with Florida plates was located in a parking lot near the Verizon store.  Receipts for several of the tools found in the backpacks were located in this truck.

[13]     Although the evidence proving that Ruibal committed burglary and theft was circumstantial, it was nevertheless substantial.  Indeed, a reasonable inference can be drawn from the foregoing facts that Ruibal was one of four men who burglarized the Verizon store that morning.  The State's evidence was more than sufficient to support Ruibal's convictions for Level 5 felony burglary and Class A misdemeanor theft.

[14]     Judgment affirmed.

Brown, J. and Tavitas, J., concur.