## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 28 2020, 8:52 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Rodney T. Sarkovics
Sarkovics Law
Carmel, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Caryn N. Szyper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Landon Patrick Hill,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

August 28, 2020

Court of Appeals Case No.
20A-CR-597

Appeal from the Hamilton Circuit Court

The Honorable Paul A. Felix, Judge

Trial Court Cause No.
29C01-1809-F5-6649

**Crone, Judge.**

## Case Summary

[1] Landon Patrick Hill challenges the sufficiency of the evidence to support his convictions for level 5 felony carrying a handgun without a license, class B misdemeanor marijuana possession, and level 6 felony theft. We affirm.

## Facts and Procedural History

[2] The facts most favorable to the verdict are as follows. Around 3:00 a.m. on September 21, 2018, Westfield Police Sergeant Scott Grimes was patrolling a two-lane stretch of Indiana State Road 32. He passed a pickup truck with a trailer traveling at thirty-eight miles per hour in a thirty-miles-per-hour zone. When he looked in his rearview mirror, he could see that the trailer taillights were not activated, as required by law. He turned his vehicle around and followed the truck. At that point, he saw that the trailer did not have a license plate, as required by law.

[3] Hill, the truck's driver and sole occupant, pulled into the parking lot of a closed gas station. Shortly thereafter, as Hill began to pull away from the pump, Sergeant Grimes activated his lights and initiated a traffic stop. During the stop, Hill was overtly nervous and excessively sweaty, considering the mild weather. Sergeant Grimes asked for Hill's license and registration, and Hill gave him his name. The truck was registered in the name of a female, who Hill said was his girlfriend. Sergeant Grimes noticed that the trailer was empty and that the pole that ordinarily supports the trailer when it is not attached to a vehicle was in an unusual position, just a couple inches off the ground. He

asked Hill where he had gotten the trailer and when he had attached it to the truck. Hill said that he had bought it "from a guy in Anderson about a week ago" and had attached it earlier that day. Tr. Vol. 2 at 75. He was unable to produce any paperwork or documentation showing ownership of the trailer. The only marking on the trailer was a "Tractor Supply" stamp. *Id*. at 79.

[4] Sergeant Dewey Abney Grimes ran Hill's name through a BMV query and discovered that Hill was driving on a suspended license. Hill was removed from the truck and arrested. When Officer retrieved Hill's cell phone from the truck at Hill's request, he discovered "marijuana shake" on the driver's side floorboard. *Id*. at 106. An inventory search of the truck produced a loaded .45 caliber handgun tucked under the steering column and a white bag containing a jar of marijuana, which was found just behind the center console.

[5] The State charged Hill with class A misdemeanor carrying a handgun without a license, class A misdemeanor driving while suspended, class B misdemeanor possession of marijuana, and level 5 felony carrying a handgun without a license with a prior conviction for class D felony carrying a handgun without a license. Meanwhile, officers attempted to ascertain the ownership of the trailer. Officer Steffan Short went to Tractor Supply to see whether they had similar trailers and discovered that the trailer in question had not been stolen from Tractor Supply. Not long after, police received a report of a trailer stolen from

Bullpen Tournaments (Bullpen).  Bullpen reported that one or two[1] of its trailers had recently been stolen from Grand Park Sports Complex.  Edward Devine, Bullpen's superintendent at Grand Park, identified the trailer recovered from Hill as one of Bullpen's trailers.  He explained that the trailer had not been used on public roads but was used only to transport sandbags to and from the various athletic fields; therefore, it was not plated.  Bullpen had purchased the trailer two years earlier for just over $1200.

[6]     The State amended the charging information to add a count of level 6 felony theft.  Hill proceeded pro se during pretrial proceedings, failed to appear for his jury trial, and was tried in absentia.  The jury convicted Hill as charged.  The trial court vacated the misdemeanor handgun conviction on double jeopardy grounds and sentenced Hill to an aggregate six-year term.  Hill now appeals.  Additional facts will be provided as necessary.

## Discussion and Decision

### Section 1 – The evidence is sufficient to support Hill's conviction for carrying a handgun without a license.

[7]     Hill first challenges the sufficiency of the evidence to support his conviction for carrying a handgun without a license.  When reviewing a challenge to the sufficiency of evidence, we neither reweigh evidence nor judge witness

---

[1] The record is unclear whether one or two trailers had been stolen from Bullpen.  This particular report appeared to involve one trailer.

credibility. *Moore v. State*, 27 N.E.3d 749, 754 (Ind. 2015). Rather, we consider only the evidence and reasonable inferences most favorable to the verdict and will affirm the conviction unless no reasonable factfinder could find the elements of the crime proven beyond a reasonable doubt. *Id*. Reversal is appropriate only when reasonable persons would be unable to form inferences as to each material element of the offense. *McCray v. State*, 850 N.E.2d 998, 1000 (Ind. Ct. App. 2006), *trans. denied*. The evidence need not "overcome every reasonable hypothesis of innocence." *Dalton v. State*, 56 N.E.3d 644, 647 (Ind. Ct. App. 2016) (citation omitted), *trans. denied*. Circumstantial evidence alone may sustain a conviction if that circumstantial evidence supports a reasonable inference of guilt. *Maul v. State*, 731 N.E.2d 438, 439 (Ind. 2000).

[8] Hill was convicted of carrying a handgun without a license as a level 5 felony, which required the State to prove beyond a reasonable doubt that he (1) carried a handgun; (2) in any vehicle or on or about his body; (3) without being licensed; and (4) had a prior conviction for carrying a handgun without a license. Ind. Code § 35-47-2-1. Hill's only argument is that the evidence is insufficient to support the jury's conclusion that he knowingly possessed the handgun recovered from the truck.

[9] A conviction for unlawful possession of a handgun may rest on proof of either actual or constructive possession. *Houston v. State*, 997 N.E.2d 407, 409-10 (Ind. Ct. App. 2013). Actual possession occurs when the defendant has direct physical control over the contraband; constructive possession is established when the defendant has both the capability and the intent to maintain dominion

and control over the contraband. *Id*. at 410. Hill's possession of the truck which housed the handgun is sufficient to establish that he was capable of maintaining dominion and control over it. *Id*. The facts supporting his capability are even more compelling given the location of the handgun within the vehicle – underneath the steering column, within his reach.

[10] Hill asserts that he did not have exclusive possession of the truck because the truck belonged to his girlfriend. However, the issue is not *ownership* of the vehicle or premises where the contraband is found but rather *possession* of it. *Goliday v. State*, 708 N.E.2d 4, 6 (Ind. 1999) (emphasis added). Hill was the sole occupant of the truck when Sergeant Grimes stopped it. As such, he had exclusive control over the vehicle at the time of the stop. "His exclusive possession of the vehicle was sufficient to raise a reasonable inference of intent." *Id*.

[11] Hill had both the capability and intent to maintain dominion and control over the handgun. His arguments concerning the officers' failure to check for fingerprints or search for documentation concerning the handgun are merely invitations to reweigh evidence, as is his argument concerning plain view. We decline his invitations. The evidence and reasonable inferences most favorable to the verdict are sufficient to support Hill's conviction for carrying a handgun without a license. We therefore affirm it.

## Section 2 – The evidence is sufficient to support Hill's conviction for marijuana possession.

[12] Hill also challenges the sufficiency of the evidence to support his conviction for marijuana possession. To convict Hill of class B misdemeanor marijuana possession, the State was required to prove that he knowingly possessed marijuana. Ind. Code § 35-48-4-11. Hill again focuses his argument on the possession element, claiming that the State failed to prove that he constructively possessed the marijuana. As with the handgun, the marijuana was discovered inside a vehicle in which Hill was the driver and sole occupant. He therefore was capable of possessing it. Also like the handgun, the bag of marijuana was close to Hill – right behind the center console, within his reach. We also note that Officer Abney observed marijuana shake on the driver's side floor of the truck, where Hill had been seated. Hill's argument that the absence of an odor suggests that he was not the person who created the mess is an invitation to reweigh evidence, which we may not do. The evidence was sufficient to establish Hill's intent. Hill constructively possessed the marijuana; therefore, we affirm his conviction for marijuana possession.

## Section 3 – The evidence is sufficient to support Hill's theft conviction.

[13] Hill also asserts that the evidence is insufficient to support his theft conviction. To convict Hill of theft, the State was required to prove beyond a reasonable doubt that he knowingly or intentionally exerted unauthorized control over property of another person with intent to deprive the other person of any part of

its value or use. Ind. Code § 35-43-4-2(a). The offense is a level 6 felony if the property has a value of at least $750 and less than $50,000. Ind. Code § 35-43-4-2(a)(1).

[14] Probative evidence establishes that Hill was in possession of Bullpen's stolen trailer. Superintendent Devine testified that the trailer recovered from Hill is "one of our trailers. I'm sure of it." Tr. Vol. 2 at 124. He recognized the trailer not merely because it was the same model but also because of the unique way that they configured the trailers for use at Grand Park. *Id*. at 129.

[15] Nevertheless, as Hill correctly asserts, the mere unexplained possession of stolen property, standing alone, does not automatically support a conviction for theft. *Fortson v. State*, 919 N.E.2d 1136, 1143 (Ind. 2010). Rather, such possession is to be considered along with other evidence, such as how recent or distant in time his possession was to the time the item was stolen and other circumstances such as proximity to the place of the theft. *Id*. Here, Bullpen superintendent Devine explained the process of unloading and parking the trailers at the end of the athletics season and indicated that the timing of the theft is consistent with the date on which Hill was found with the trailer and arrested. Moreover, the gas station where Hill was found with the trailer was within two or three miles of the Grand Park outbuilding where the trailers had been parked. Hill told Sergeant Grimes that he lived in Noblesville and said that he was on his way home from his girlfriend's house in Indianapolis. When the sergeant asked him "how he had gotten to be on State Road 32 in Westfield," he said that "he needed to check his GPS to remember how he got

to where he was at from Indianapolis." Tr. Vol. 2 at 76. It was within the jury's province to assess the credibility of Hill's explanation for his presence in Westfield at 3:00 a.m.

[16] Moreover, both Sergeant Grimes and Officer Abney testified that Hill was pouring with sweat even though the weather was mild and it was the middle of the night. The officers also noticed abnormalities in the way that the trailer had been fastened to the truck that Hill was driving. For example, both officers explained that their attention was drawn to the unusual position of the pole at the front of the trailer, which was too close to the ground. Officer Abney, who has owned and used a trailer for many years, testified concerning other aspects of the trailer that were abnormal, most notably, that the secondary trailer hooks, which keep the trailer from becoming detached if the truck and trailer hit bumps or potholes, simply were not there. He stated that it "looked like [the trailer] was just put on there very quickly and not with any thought of hauling things." *Id*. at 103. This evidence supports a reasonable inference that Hill's profuse sweating was attributable at least in part to his recent exertion in (quickly and awkwardly) connecting the trailer to the truck at the nearby Grand Park. Hill's statements to Sergeant Grimes that he had purchased the trailer a week earlier from an unnamed guy in Anderson amount to an invitation to reweigh evidence, which we may not do. The evidence and reasonable inferences most favorable to the verdict are sufficient to support the jury's conclusion that Hill knowingly or intentionally exerted unauthorized control over Bullpen's trailer with intent to deprive Bullpen of its use and value.

Finally, Hill claims that the State failed to establish that the trailer had a value of at least $750. Devine testified that he was the purchasing agent who actually bought the trailer two years earlier for "just over $1200." *Id*. at 129. He also explained that the Bullpen trailers were never taken out on the roadways and were used only to haul sandbags around Grand Park. *See* State's Ex. 2 (photograph depicting stolen trailer as clean and in good condition). This testimony supports the jury's reasonable inference that the trailer was still worth at least $750. Based on the foregoing, we conclude that the evidence is sufficient to support Hill's conviction for theft as a level 6 felony. Accordingly, we affirm.

Affirmed.

Robb, J., and Brown, J., concur.