## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 25 2020, 8:19 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Matthew M. Kubacki
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Megan M. Smith
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Clarence Edward Bell, Jr., *Appellant-Defendant,* v. State of Indiana, *Appellee-Plaintiff.* | November 25, 2020 |
| | Court of Appeals Case No. 20A-CR-668 |
| | Appeal from the Vigo Superior Court |
| | The Honorable Sarah K. Mullican, Judge |
| | Trial Court Cause No. 84D03-1809-MR-3346 |

**Altice, Judge.**

## Case Summary

[1] Clarence E. Bell, Jr. appeals his conviction for murder, challenging the sufficiency of the evidence. Specifically, Bell contends that the State failed to present sufficient evidence establishing that he was the individual who shot Raymond Rose in the head.

[2] We affirm.

## Facts & Procedural History

[3] Bell lived on 16th Street, just south of Wabash Avenue in Terre Haute. He had a contentious relationship with the residents of the house next door to him, as homeless individuals and drug users frequented that home at all hours of the day and night.

[4] During the day on September 11, 2018, Rose, a homeless man who stayed in a nearby park, walked through Bell's yard toward the home next door. Bell confronted Rose and told him to stay off his property and away from his vehicles. The two engaged in a heated verbal exchange, which was witnessed by Rose's friend Charles Compton, as well as others. At some point during the argument, Bell displayed a handgun and threatened to shoot Rose. Codi Nesbit, who was inside the neighboring home, overheard someone, whom Nesbit believed was Bell, saying "they would put a bullet in their head and rid the city of homeless trash." *Transcript Vol. IV* at 132.

[5] Later that afternoon, Terre Haute Police Officer Darryl Cooley pulled up to his own home with his son. Officer Cooley was in his marked police vehicle but

was off duty. Bell, who lived down the road from Officer Cooley, pulled up next to him. Bradley Nutter, Bell's good friend, was in the passenger seat of Bell's vehicle. Bell told Officer Cooley that he would like to file a report about the neighboring house and the people cutting through his property. Bell also noted the earlier argument he had with one of these individuals. When he realized that Officer Cooley was off duty, Bell apologized for bothering him and calmly said "something along the lines of if he catches them in his yard again, he was gonna put a bullet in their head." *Transcript Vol. III* at 29. At the time, Officer Cooley thought little of this statement and believed Bell was just "upset about the situation, kind of releasing some steam." *Id*. at 30-31.

[6] After midnight on September 12, 2018, Rose and Compton, who had both consumed alcohol and drugs throughout the day, were walking through the area when Rose went over and intentionally scratched one of Bell's vehicles with an object. Devon Keller, who lived across the street from Bell, witnessed the incident and then saw Rose head north on 16th Street and then, short of Wabash Avenue, turn east into an alley heading toward 17th Street. Keller immediately went over and told Bell what he had just observed.

[7] In the meantime, Rose and Compton walked down the alley, with Compton walking a distance ahead of Rose. As they walked, Rose stopped several times to look into and enter parked vehicles in order to steal items inside. This made Compton uncomfortable, so he left Rose somewhere in the alley between 17th and 18th Street while Rose "continued to disturb other vehicles." *Transcript Vol. IV* at 45.

[8] Back at Bell's residence, Bell acted as if he knew who was responsible for scratching his car. He started to put on his shirt and told Keller to call the police. While Keller was talking with the 911 dispatcher, Bell offered details regarding the perpetrator. Bell also helped Keller describe the direction that the man headed after scratching the car. A dispatch for criminal mischief went out at 12:47 a.m. After the call, Bell drove away in his silver Ford pickup truck and went down the alley where Rose and Compton had recently gone.

[9] Officer Christopher Alexander responded to the dispatch and arrived at Bell's home in about five minutes. Officer Alexander spoke with Keller for about another five minutes regarding the report. Bell was not present at the time. After briefly searching for the suspect in his patrol car, Officer Alexander returned shortly after 1:00 a.m. when he saw another vehicle at Bell's residence. He pulled up and encountered Bell, whom he spoke to about the incident. Bell pointed out the scratch and indicated that he believed it was made by a homeless man with whom he had recently had an argument. Officer Alexander stated that he would make a report, and he left the scene by about 1:17 a.m.

[10] Around this time, Scott Wayland returned from Walmart to his home on 18th Street, near the alley in question, with his daughter and son-in-law. While driving, they saw an individual, later identified as Rose, lying partially in the street. They stopped and determined that he was unresponsive, so Wayland's daughter called 911 at 1:16 a.m.

[11]     Rose was identified and pronounced dead at the hospital. The cause of death was a single gunshot wound to the head, which was not self-inflicted. Rose had been shot at near-contact range on the right side of his head, near his ear. The fragments removed during the autopsy were consistent with a .22 caliber bullet.

[12]     Surveillance video footage of the relevant time period was obtained from businesses along the alley between 16th and 18th Streets. On some of the videos, Rose and Compton were seen walking eastbound through the alley at a distance from each other and a silver Ford pickup truck that looked like Bell's traveled the same path about ten minutes thereafter, around 1:00 a.m.

[13]     Bell became a suspect and his home was searched later that evening, while he was with Nutter in Indianapolis, where Bell had driven earlier in the day. No firearm was found, but boxes of both .22 and .25 caliber ammunition were discovered in a cabinet in his living room. Some of the ammunition was missing. Bell also carried a current handgun permit in his wallet. During a subsequent interview with detectives in the early hours of September 13, 2018, Bell claimed that he had not owned a firearm for some time and had never owned a .22 caliber firearm. Nutter, however, later testified that he had seen Bell with a small caliber handgun between one and five months before Rose's death.

[14]     On September 19, 2018, the State charged Bell with murder and obstruction of justice. While being held in the Vigo County Jail in December 2018, Bell told Tommy Edwards, a fellow inmate, that after he learned about his car being

scratched, "he jumped in his ride and went and found him, and he popped the mother f\*\*ker, and he won't scratch no more cars." *Id*. at 249.

[15] Bell's jury trial was held on September 23 through 26, 2019. The jury found Bell guilty of Rose's murder, and the trial court dismissed the obstruction of justice charge. At the sentencing hearing on February 21, 2020, the trial court sentenced Bell to fifty-five years. Bell now appeals. Additional information will be provided below as needed.

## Discussion & Decision

[16] Bell contends that the State failed to present sufficient evidence to establish that he was the individual who murdered Rose. Our standard of review for such a claim is well settled. "Convictions should be affirmed unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *T.H. v. State*, 92 N.E.3d 624, 626 (Ind. 2018). Thus, when reviewing the sufficiency of the evidence on appeal, we must consider only the probative evidence and reasonable inferences supporting the conviction, and we should not assess witness credibility or weigh the evidence. *See Moore v. State*, 27 N.E.3d 749, 754 (Ind. 2015). "A verdict may be sustained based on circumstantial evidence alone if that circumstantial evidence supports a reasonable inference of guilt." *Maul v. State*, 731 N.E.2d 438, 439 (Ind. 2000). Further, the evidence need not overcome every reasonable hypothesis of innocence. *Drane v. State*, 867 N.E.2d 144, 147 (Ind. 2007).

[17]   Viewing the facts and reasonable inferences favorable to the verdict, we find substantial evidence of probative value supporting Bell's conviction for murder. The facts establish that less than a day before the murder, Bell angrily argued with Rose, displayed a handgun, and threatened to shoot him. Shortly thereafter, he reiterated that sentiment to Officer Cooley when he nonchalantly stated that he would "put a bullet in their head" if he caught the individual trespassing through his yard again. *Transcript Vol. III* at 29. Then, before 1:00 a.m., Bell learned from Keller that the trespasser had just returned and intentionally put a large scratch in Bell's vintage vehicle. Keller informed Bell of the direction in which the man walked and, after Keller called 911, Bell took off in his truck down the same alley Rose had recently traveled. Video from nearby businesses verified that about ten minutes after Rose walked past, a truck matching Bell's traveled down the alley in the same direction. Indeed, Bell and his truck were not present when Officer Alexander initially responded to Bell's address on the dispatch regarding criminal mischief. Bell then arrived back at his home shortly before Rose's body was found a few blocks away. The autopsy revealed that Rose had been shot in the head with a .22 caliber bullet.

[18]   In addition to the above evidence, a search of Bell's residence later that day revealed boxes that were partially full of ammunition, including .22 caliber bullets. No handgun was recovered from the home, but Bell had traveled to Indianapolis with Nutter several hours after the murder. By his own admission, Bell had also gone to Nutter's house after Officer Alexander finished the brief

criminal mischief investigation and had traveled to several other locations with Nutter thereafter before heading to Indianapolis.

[19] During Bell's interview with detectives the day after the murder, he made a number of self-serving and questionable claims, including that he did not own any guns at the time because he had pawned them long ago, he was not particularly upset about someone scratching his car, he had no idea who scratched his car, and, although he drove his truck after the 911 call, he did not drive down the alley. Additionally, Bell acknowledged speaking with Officer Cooley about his neighbors and their visitors, as well as the earlier confrontation with a trespasser, but he denied saying anything to Officer Cooley about putting a bullet in someone's head.

[20] Additionally, the State presented the testimony of a Tommy Edwards, who was in jail with Bell during December 2018 and also knew him from the past. According to Edwards, the two had several discussions and Bell told him that "he jumped in his ride and went and found him, and he popped the mother f\*\*ker, and he won't scratch no more cars." *Transcript Vol. IV* at 249. Bell's suggestion that this extra-judicial confession was inadmissible based on the corpus delicti rule is wholly without merit. Not only did he fail to object to the admission of this evidence below, resulting in waiver on appeal, but the rule has no application here. "The purpose of the corpus delicti rule is to prevent the admission of a confession to a crime which never occurred." *Shinnock v. State*, 76 N.E.3d 841, 843 (Ind. 2017). Here, it is undisputed that Rose was murdered, dying of a gunshot wound to the head, and thus there is clear proof

of the corpus delicti. *See id*. ("Proof of the corpus delicti means 'proof that the specific crime charged has actually been committed by someone.'") (quoting *Walker v. State*, 233 N.E.2d 483, 488 (Ind. 1968)); *Willoughby v. State*, 552 N.E.2d 462, 467 (Ind. 1990) ("Evidence of an identifiable body bearing the marks of a non-accidental death adequately establishes the corpus delicti of murder.").

[21] Contrary to Bell's assertions on appeal, his conviction is not based on "mere suspicion of guilt" and "rote opportunity for the act of murder to occur". *Appellant's Brief* at 8. Further, his claims that the State failed to produce a firearm or match the bullet fragments to the ammunition found in Bell's home and that the truck seen on the surveillance footage was not necessarily his are wholly improper requests to reweigh the evidence. We conclude that a reasonable factfinder could find beyond a reasonable doubt that Bell murdered Rose and, therefore, affirm his conviction. *See T.H.*, 92 N.E.3d at 626.

[22] Judgment affirmed.

Riley, J. and May, J., concur.