## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 17 2019, 8:52 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Ellen M. O'Connor
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Samantha M. Sumcad
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Kenneth Wayne Ellis,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

May 17, 2019

Court of Appeals Case No.
18A-CR-1996

Appeal from the Marion Superior Court

The Honorable Grant W. Hawkins, Judge

The Honorable Peggy Ryan Hart, Magistrate

Trial Court Cause No.
49G05-1702-F5-7406

**Barnes, Senior Judge.**

# Case Summary

[1] Kenneth Wayne Ellis appeals his convictions by bench trial of battery by means of a deadly weapon as a Level 5 felony[1] and battery resulting in bodily injury as a Class A misdemeanor.[2] We affirm.

# Issue

[2] Ellis raises one issue, which we restate as whether there was sufficient evidence to support his convictions.

# Facts and Procedural History

[3] Sabrina Clenna and Paulette Clenna are sisters-in-law. Sabrina is married to Paulette's brother. In 2017, Paulette was dating and living with Ellis in an apartment located on the east side of Indianapolis approximately one and one-half blocks from Sabrina's apartment.

[4] On the early afternoon of February 22, 2017, Sabrina and Paulette were at Sabrina's apartment, watching television and "[d]rinking and talking and having fun." Tr. p. 23. They consumed alcohol from the early afternoon until eight o'clock p.m. but began to drink more heavily thereafter. Around eleven o'clock p.m., Paulette broke the antennae for the television. The two then left

---

[1] Ind. Code §§ 35-42-2-1(c)(1), –(g)(2) (2016).

[2] I.C. §§ 35-42-2-1(c)(1), –(d)(1).

Sabrina's apartment and walked to Paulette's apartment because "[Paulette] said she had an extra [antennae] at her house." *Id.* at 26.

[5]   Ellis was in the apartment when Sabrina and Paulette arrived. Once at the apartment, Paulette continued to consume alcohol, but Sabrina stopped drinking. At some point, Ellis left the apartment and asked Sabrina to "keep an eye on Paulette because Paulette was intoxicated and she gets a little wild when she drinks." *Id.* at 28.

[6]   While Ellis was gone, Sabrina realized that she had lost her cell phone. She wanted to call her husband to let him know she was at Paulette's apartment. Sabrina left the apartment and "looked all over" the building for her phone. *Id.* at 29. She "figured [she] must have dropped it somewhere." *Id.*

[7]   Her search ended in the laundry room located in the basement of the building. There she found her phone and Ellis. Ellis then "tried to come on to" Sabrina. *Id.* He told her that he liked her and that he wanted to be with her. Sabrina rebuffed his advances and told him, "[T]hat's not the type of person I am." *Id.* Though sisters-in-law, Sabrina saw Paulette as a biological sister.

[8]   Sabrina left the laundry room, returned to Paulette's apartment, and told Paulette what had happened. Ellis entered the apartment a short time later. He first denied that he had made advances toward Sabrina, but, eventually, he confessed. Ellis and Paulette began to argue. Sabrina could not recall what happened immediately after the couple began to argue, however, she believed that at some point Ellis pushed her. She recalled fighting with Ellis,

specifically, that he was "swinging at me and I was swinging back." *Id.* at 31. Sabrina did recall "falling on the bed and kicking . . . Ellis off of me. . . . I kicked him backwards and we both fell to the floor." *Id.* While Sabrina was on the floor, Ellis, who was wearing shoes, stomped on her face twice. Sabrina rolled under the bed in an attempt to escape from Ellis and then managed to stand. At that point, she saw Ellis standing before her holding a machete that had blood on it. Sabrina noticed that neither Ellis nor Paulette bore any cuts. Sabrina then went to the bathroom to examine herself. Her face was "just bloody" and was "starting to be puffy and there was just blood springing from everywhere." *Id.* at 35. She did not see any cuts to her face. She did not recall being struck with the machete. However, she had a fleeting memory of Paulette hitting her in the face with a broomstick after she emerged from the bathroom.

[9] Sabrina, in pain and now barefoot, left the apartment and walked back to her own apartment. It was after midnight and into the early hours of the next morning. As she walked to her apartment in the dark, she noticed a pain in her foot that felt as if her foot had been broken. She was familiar with the feeling because several years prior, she had broken her foot. The pain in her foot was so intense it took her ten to twenty minutes to ascend the steps to her apartment.

[10] When Sabrina reached her apartment, her husband immediately called 911. After providing a statement to the responding Indianapolis Metropolitan Police Department (IMPD) officers, Sabrina was taken to the hospital where it was discovered that she had a gash on her forehead about one inch from her eye.

Medical personnel informed Sabrina that, if the cut to her forehead had been an inch closer to her eye, she would have "been blind or lost [her] eyeball." *Id.* at 41. She also was told that her foot had been cut through the bone. The gash on her forehead required "a lot of stitches." *Id.* at 42. The cut to her foot required surgery to reseal the bone.

[11]   IMPD detective Christopher Winter went to the hospital to interview Sabrina and show her a "photo array" containing Ellis's photograph. *Id.* at 73. He met with Sabrina before she received treatment and noticed that she was "lying on her back on a gurney with a neck brace on[,] bleeding from multiple spots on her body." *Id.* at 74. Sabrina was able to identify Ellis from the photo array.

[12]   Meanwhile, IMPD officers went to Paulette's apartment to investigate. Ellis was found lying on the floor underneath a blanket. Officers placed him in handcuffs. Officer Timothy Clark, who worked as an IMPD evidence technician, arrived at the apartment. He took photographs of the crime scene and of Ellis, and he recovered the machete. He observed broken glass on the floor, blood on the bed sheets, and blood stains on the white boxer shorts that Ellis wore. A broom was depicted in one of the photographs. Ellis was taken into custody.

[13]   On February 24, 2017, the State charged Ellis with Count I battery by means of a deadly weapon as a Level 5 felony, Count II battery resulting in serious bodily injury as a Level 5 felony, and Count III battery resulting in bodily injury, a

Class A misdemeanor. On October 2, 2017, the State filed an habitual offender enhancement.[3]

On May 10, 2018, Ellis waived his right to trial by jury and proceeded to a bench trial. He was found guilty as charged. On July 24, 2018, he pleaded guilty to being an habitual offender. The trial court merged count II with count I and imposed a sentence. This appeal followed.

# Discussion and Decision

Ellis argues that there was insufficient evidence to support his convictions because Sabrina was "insufficiently sober to recall how she sustained her injuries" and only "speculated" that her injuries were caused by Ellis's use of a machete. Appellant's Br. p. 8. He claims that Sabrina's "spotty memory, due to her level of intoxication, points to an absence of evidence rather than a request to reweigh the evidence or an attack on the weight of her testimony." *Id.* at 11.

In reviewing the sufficiency of the evidence, we consider only the evidence and reasonable inferences most favorable to the conviction, neither reweighing the evidence nor reassessing witness credibility. *Griffith v. State*, 59 N.E.3d 947, 958 (Ind. 2016). We will affirm the judgment unless no reasonable factfinder could find the defendant guilty. *Id.* It is not necessary that the evidence overcome

---

[3] Ind. Code § 35-50-2-8(a) (2015).

every reasonable hypothesis of innocence; rather, the evidence is sufficient if an inference may reasonably be drawn from it to support the conviction. *Drane v. State*, 867 N.E.2d 144, 147 (Ind. 2007). "A verdict may be sustained based on circumstantial evidence alone if that circumstantial evidence supports a reasonable inference of guilt." *Maul v. State*, 731 N.E.2d 438, 439 (Ind. 2000).

[17] The Indiana Code provides that battery is a Level 5 felony when it is committed with "a deadly weapon." Ind. Code § 35-42-2-1(g)(2). The Indiana Code further defines "deadly weapon" to mean, among other things, any "material that in the manner it: (A) is used; (B) could ordinarily be used; or (C) is intended to be used; is readily capable of causing serious bodily injury." Ind. Code § 35-31.5-2-86(a)(2) (2012). And "serious bodily injury" is defined in relevant part as bodily injury that causes "extreme pain." Ind. Code § 35-31.5-2-292(3) (2012). Battery is a Class A misdemeanor if it results in bodily injury. I.C. §§ 35-42-2-1(c)1, –(d)(1). "Bodily injury" is defined as any impairment of physical condition, including physical pain. Ind. Code § 35-31.5-2-29 (2012).

[18] Here, the evidence established that Sabrina had been drinking heavily but stopped drinking after arriving at Paulette's apartment. When she entered Paulette's apartment, she had no cuts or gashes. Sabrina clearly recalled Ellis making a pass at her and then arguing with Paulette. Sabrina also recalled physically fighting with Ellis in an effort to get him off of her, falling to the floor, and enduring two stomps to the face by Ellis. Her next memory was of Ellis standing before her with a bloody machete in his hand. She recalled that both Ellis and Paulette were unharmed. An evidence technician found a

machete at the scene of the crime and observed that Ellis had blood stains on the boxer shorts he wore.

[19] Sabrina's injuries were so severe that she required stitches for her forehead and surgery to reseal the bone in her foot. She remained in the hospital for three days and required twelve follow-up medical appointments. Sabrina testified that due to the injuries, she suffers from frequent migraines and cannot stand on her foot for longer than three hours at a time without suffering throbbing pain and swelling.

[20] We acknowledge Sabrina does not precisely remember being cut on either her forehead or her foot and that she was made aware of the extent of her injuries by hospital personnel. Nevertheless, the evidence supporting the verdict gives rise to a reasonable inference that Ellis cut her forehead and foot with the machete. In sum, the evidence and reasonable inferences arising therefrom establish Ellis committed battery by means of a deadly weapon and battery resulting in bodily injury.

[21] Ellis further argues that the evidence does not support his convictions because "[Sabrina] did not know how or why [Ellis] had a machete in his hands;" when she examined herself in the bathroom mirror, she did not detect a cut on her face; "Paulette . . . smacked her in the forehead with a broomstick afterwards;" "[Sabrina's] right foot hurt, but she was in a room scattered with broken glass;" "[s]he walked home barefoot;" and "[t]he police did not examine the machete for blood." Appellant's Br. p. 9. We regard these arguments as a request to

weigh the evidence and assess witness credibility, which we cannot do. *See Sallee v. State*, 51 N.E.3d 130, 134-35 (Ind. 2016) (circumstantial evidence sufficient to sustain convictions for murder).

# Conclusion

[22] We find the State presented sufficient evidence to support Ellis's convictions for battery by means of a deadly weapon and battery resulting in bodily injury. The judgment of the trial court is affirmed.

[23] Affirmed.

Pyle, J., and Altice, J., concur.